Gerrit M. Pronske
State Bar No. 16351640
Melanie P. Goolsby
State Bar No. 24059841
**PRONSKE GOOLSBY & KATHMAN, P.C.**
901 Main Street, Suite 610
Dallas, Texas 75202
(214) 658-6500 – Telephone
(214) 658-6509 – Facsimile
Email: gpronske@pgkpc.com
Email: mgoolsby@pgkpc.com

**COUNSEL FOR THE TRUSTEE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re: § <br> § **CASE NO. 16-30427-bjh-7** <br> **SHAWN ERIC SHEARER.,** § <br> § **CHAPTER 7** <br> Debtor. § <br> § <br> **SCOTT SEIDEL, Chapter 7 Trustee,** § <br> § <br> Plaintiff § **Adversary No. _____** <br> v. § <br> § <br> **THE SHEARER LAW GROUP P.C. and** § <br> **SHAWN ERIC SHEARER,** § <br> § <br> Defendant. § | |

**PLAINTFF'S ORIGINAL COMPLAINT AND APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION**

**TO THE HONORABLE JUDGE OF SAID COURT:**

Scott Seidel, Chapter 7 Trustee (the "Trustee" or "Plaintiff") files this Original Complaint and Application for Temporary Restraining Order and Temporary Injunction against The Shearer Law Group, PC (the "Firm") and Shawn Eric Shearer (the "Debtor"), and in support thereof, would respectfully show unto the Court as follows:

## I.     JURISDICTION & VENUE

1. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1332 and 1334.

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.     PARTIES

3. Plaintiff Scott Seidel is the Chapter 7 Trustee in the above-captioned bankruptcy case. He can be served through his counsel of record in this adversary proceeding.

4. Defendant The Shearer Law Group, PC (the "Firm") is a Texas professional corporation organized under the laws of the State of Texas for the purpose of the practice of law. The Firm may be served with process through its designated agent for service of process Shawn Eric Shearer, at 3001 Sale Street, #321, Dallas, Texas 75219, or wherever else he may be found.

5. Defendant Shawn Eric Shearer (the "Debtor") is the debtor in the above-captioned bankruptcy case and may be served with process at 3001 Sale Street, No. 321, Dallas, Texas 75219, or wherever else he may be found.

## III.     FACTUAL BACKGROUND

### A. Arizona Litigation

6. Debtor filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code on February 1, 2016 (the "Petition Date").

7. Debtor, an attorney, was the 100% equity interest holder in the Firm as of the Petition Date. Debtor is also President of the Firm and the sole professional employed by the Firm pursuant to an employment contract generated after the Petition Date. Because the Debtor was the sole shareholder of the Firm as of the Petition Date, the Debtor has exclusive authority over the assets of the Firm, subject to the Firm's governing documents and the rights of any

creditors of the Firm, but refuses to turn those assets over to the Trustee despite the fact that those assets became property of the estate by the filing of the Bankruptcy Petition, pursuant to section 541(a)(1) of the Bankruptcy Code.

8. The Firm entered into an Engagement Letter and Fee Arrangement (the "Engagement Agreement") on or about November 7, 2014 whereby The Shearer Firm agreed to represent Steve Peitler, JM Living Trust, and Jennifer Peitler (together, the "Clients") in a litigation matter in Arizona.

9. Debtor has informed counsel for the Trustee that the Firm has only three (3) additional current clients other than the Arizona Clients, each of whom is a family member of the Debtor.

10. Under the terms of the Engagement Agreement, Clients agreed to pay the Firm a 33 1/3% contingency fee of any amounts recovered in the Arizona litigation, subject to the payment of a $12,000 fee, to be paid in $500 monthly installments beginning January 2015. In the event of the payment of the contingency, Clients would receive a credit for any portion of the $12,000 fee paid at the occurrence of the contingency.

11. On August 31, 2015, the Superior Court of Arizona for Maricopa County, Arizona (the "Arizona Court") entered a Minute Entry finding that the Clients were entitled to summary judgment in the amount of $479,746.38.

12. On December 10, 2015, before the Clients could obtain a Final Judgment in the Arizona Litigation, the Arizona Defendants filed Chapter 11 bankruptcy in the United States Bankruptcy Court for Arizona.

13. On February 15, 2016, the Arizona Defendants filed a motion with the Arizona Bankruptcy Court seeking approval of a settlement that would resolve the Clients' claims against

the Arizona defendants. On March 20, 2016, the Arizona Bankruptcy Court entered an order approving the proposed settlement without conducting a hearing.

14. The Firm received payment of its contingency fee from the settlement on or about March 23, 2016. The net amount of the fee, after reimbursement of expenses and payment of other obligations related to the engagement with the Clients, is approximately $65,000 (the "Net Fee").

**B. The Shearer Bankruptcy Case**

15. Debtor disclosed his equity interest in the Firm in his schedules, which he valued at zero dollars on the Petition Date, and does not claim any exemption in the equity interest.

16. The value of the Debtor's equity interest in the Firm has increased since the Petition Date by at least the amount of the Net Fee as well as any accounts receivable accrued since the Petition Date. Upon information and belief, the Firm has very few current liabilities other than accrued wages owed to the Debtor and/or any professional or administrative staff.

17. The Section 341 meeting of creditors concluded on May 31, 2016.

18. The Debtor was discharged on June 1, 2016.

**C. Post-Petition Events**

19. The Declaration of Melanie P. Goolsby setting forth the facts and circumstances described below and incorporating the exhibits referenced below is attached hereto and incorporated by reference herein.

20. Prior to the 341 Meeting, the Debtor agreed with the Trustee to maintain the status quo concerning Net Fee received by the Firm and agreed that the Firm would not spend the Net Fee funds held by the Firm.

21. On June 22, 2016, the Trustee filed a motion to obtain an order under Section

542(a) of the Bankruptcy Code directing the Debtor to turnover to the Trustee the equity interest in the Firm and the sole shareholder authority to manage the assets of the Firm.

22. On August 26, 2016, the Friday before the hearing on the Trustee's turnover motion, counsel for the Trustee participated in a number of phone conferences with the Debtor to discuss the dispute underlying the Trustee's motion. During the course of their phone calls, the Debtor disclosed, for the first time, that the $65,000 Net Fee *was not held in a Firm bank account, but rather was held generally "in the Firm" in cash and cashier's checks*. The Debtor provided no explanation for why the Net Fee was held in cash and cashier's checks rather than in a Firm bank account and could not give counsel for the Trustee a specific accounting of the amount of cash and the amount of cashier's checks held by the Firm. By the conclusion of the parties' calls the afternoon of August 26, 2016, the Debtor had assured counsel for the Trustee that the full amount of the Net Fee would be deposited into a Firm account within the next 24 hours and that he would provide confirmation of same to counsel for the Trustee.

23. After concluding the phone calls, counsel for the Trustee took two important steps to ensure the security of the Net Fee in light of the Debtor's disclosures over the phone. First, counsel for the Trustee advised the Debtor via email to cease and desist from all transfers and transactions on behalf of the Firm and to prepare an accounting of Firm transactions from the Petition Date through the date of the hearing. A true and correct copy of counsel's August 26, 2016 email is attached to the Goolsby Declaration as **Exhibit A**. Second, the Trustee served a trial subpoena to the Debtor instructing the Debtor to bring to the hearing on August 29, 2016 all cash, cashier's checks, and cash equivalents of the Firm (mistakenly identified as The Shearer Law Firm, PC) as well as statements and/or electronic bank records of all Firm accounts as of August 29, 2016. A true and correct copy of the trial subpoena is attached to the Goolsby

Declaration as **Exhibit B**.

24. A little over two hours after service of the subpoena on the Debtor, the Debtor responded to counsel for the Trustee by email to say that "I have received your e-mail and subpoena and will be working to provide you everything requested." A true and correct copy of the Debtor's responsive August 26, 2016 email is attached to the Goolsby Declaration as **Exhibit C**. The Debtor attached a handful of Firm corporate documents, including the Bylaws and stock ledger, but concluded his email assuring the Trustee and counsel that "[m]ore e-mails will be forthcoming with the additional information you requested, *including proof that the $65,000 is available as indicated numerous times over the last six-months to Mr. Seidel, Ms. Goolsby, and Mr. Pronske*."

25. Notwithstanding his assurance of additional emails with the requested information, the Debtor emailed Trustee and counsel, on August 28, 2016 at 11:47 p.m., that he had complied with everything that he could and would have in his possession at the August 29, 2016 hearing, among other things, bank records showing Firm account balances as of August 28, 2016 exceeding $65,000. A true and correct copy of the Debtor's August 28, 2016 email is attached to the Goolsby Declaration as **Exhibit D**.

26. The morning of August 29, 2016, Debtor filed a Motion to Quash the trial subpoena, a true and correct copy of which is attached to the Goolsby Declaration as **Exhibit E**, raising a number of objections to the subpoena. [Bankr. Docket No. 40] The Debtor objected that he was not aware of any entity named The Shearer Law Firm, PC, although the subpoena was obviously intended to reference the Firm within the context of the course of discussions between the parties on August 26, 2016. The Debtor also objected that it was unreasonable to produce bank statements as of August 29, 2016 since the banking day did not conclude until after the time

the hearing was to begin, ignoring the subpoena's request for *electronic* bank records as of August 29, 2016, which may be generated at any time via access to the online account. Finally, the Debtor objected that the subpoena demanded production of attorney-client privileged communications, although there may be nothing privileged about the production of cash and cashier's checks, and electronic records showing bank balances contain no privileged communications. As of the date of this Complaint, the Debtor has not yet set a hearing on his Motion to Quash and has not obtained an order relieving him from his obligations under the subpoena.

27. At the hearing on the Trustee's Motion held on August 29, 2016, the Debtor objected to the Bankruptcy Court adjudication of the Trustee's rights with respect to the equity interest without an adversary proceeding, and, on that basis, the Bankruptcy Court entered an order denying the Trustee's motion without prejudice. A true and correct copy of the August 29, 2016 hearing transcript is attached to the Goolsby Declaration as **Exhibit F**.

28. On the record at the hearing, the Debtor indicated his consent to continue to maintain the status quo concerning the Net Fee and agreement to not spend the Net Fee held by the Firm, but equivocated as to the period of time to which the Debtor would continue to so agree:

> MR. SHEARER: No, I -- I can continue to comply with that. But I just need to advise them that at some point, I may need to seek an order that allows me to -- my firm to use those funds. Because the position, you know, is that those funds are not property of the estate, and that they are the proceeds of

> my post petition labor. And the trustee really doesn't have a right to tell me what to do with them.
>
> So -- I mean I can -- I can handle that for, you know, a period of time, but, you know, the fresh start is becoming a stale start. It's -- it's -- this is taking too long for me to keep sitting on this, and try to support the practice. And -- so, you know, if they can get it filed, and we can do this the right way quickly, you know, I can do that for, you know, another month or so. But at some point, I'm going to need to press the issue.

(Transcript, pp.28-9)

29. The Debtor also stated that the Firm has outstanding invoices that require payment and purchases to make, including payment on a malpractice insurance policy, a Lexis-Nexis bill, and the purchase of toner and paper. (Transcript, pp.27-8)

30. As recommended by the Bankruptcy Court, counsel for the Trustee reached out to the Debtor after the conclusion of the hearing to arrange a meeting to discuss the parties' dispute and the terms of a mutually aggregable status quo arrangement. Counsel for the Trustee also requested the Debtor bring to the meeting the outstanding Firm invoices and/or statements referenced on the record at the hearing, a proposed operating budget for the Firm, and, again, documentary proof of the security of the Net Fee in a Firm account, such as a print-off from an online banking statement showing the account balance with $65,000 or more. On a late afternoon phone call on August 29, 2016, *after* the Debtor had filed his Motion to Quash, the Debtor agreed to meet with counsel for the Trustee as requested the following day, on August 30, 2016 at 10:30 a.m. (later rescheduled at Debtor's request to 4:00 p.m.), and **agreed to provide the**

*documentation requested by the Trustee, including specifically proof of deposits in a Firm account in excess of $65,000*.

31. On the day of the meeting, at 3:22 p.m., the ***Debtor cancelled the scheduled 4 p.m. meeting*** via email, citing scheduling conflicts and personal obligations that prevented him from keeping the appointment. A true and correct copy of the Debtor's email is attached to the Goolsby Declaration as **Exhibit G**.

32. Counsel for the Trustee immediately responded to Debtor's email cancelling the meeting and offered to reschedule the meeting to the following Tuesday, September 6, 2016 (and then later to the morning of August 31, 2016 by separate email). Counsel also repeated her request to see proof of a bank balance of at least $65,000, which Debtor had agreed to provide at the cancelled meeting. A true and correct copy of counsel's email is attached to the Goolsby Declaration as **Exhibit H**. By separate email, Mr. Pronske also requested the Debtor to immediately provide proof of funds via email since the Debtor had cancelled the meeting at which he agreed to provide such proof. A true and correct copy of Mr. Pronske's August 30, 2016 email is attached to the Goolsby Declaration as **Exhibit I**.

33. Over the next two days, email correspondence between the Debtor and counsel for the Trustee continued to occur, in which the Debtor persisted in his refusal to provide any proof of funds in Firm accounts in the amount of the Net Fee and his refusal to respond to counsel's request to set a meeting the following week after counsel returned from travelling to attend oral argument before the United States Court of Appeal for the Fifth Circuit in an unrelated case.

34. As of the date of this Complaint, the Debtor has failed and refused to provide the Trustee with documentary proof of funds showing that the Net Fee is deposited in a Firm account

and has failed and refused to meet with the Trustee to discuss a status quo arrangement pending resolution of the dispute over the ownership of the Firm.

35. **To recap:** In a phone conference late in the day on August 26, 2016, the Debtor disclosed for the first time that the Net Fee was held in cash and/or cashier's checks and not in a bank account, but also assured the Trustee that the funds would be on deposit within 24 hours from their phone conference. In light of the Debtor's disclosure, the Trustee, through his counsel, has made no fewer than five separate requests to Debtor to provide proof of retention of the Net Fee in a Firm bank account beginning August 26, 2016 through September 1, 2016. The Debtor agreed to provide the requested proof of funds on August 26, 2016, August 28, 2016, and again on August 29, 2016, *after* he had filed a Motion to Quash the Trustee's subpoena. But at each point where the Debtor had agreed to produce the proof of funds, the Debtor made excuses for why such proof was not available, refused to comply with his earlier agreement, or simply ignored the request. Despite the Bankruptcy Court's instructions to meet and confer and the repeated requests of counsel for the Trustee, the Debtor has refused to meet with the Trustee and his counsel to discuss a mutually agreeable arrangement to preserve the Net Fee and provide for Firm operations during the pendency of the Trustee's inevitable lawsuit. The Trustee must therefore seek relief from the Bankruptcy Court as requested herein.

### IV.    CAUSES OF ACTION

**Count One:**
**Declaratory Judgment (Debtor & Firm)**

36. Plaintiff incorporates each of the foregoing paragraphs by reference as if fully set forth herein verbatim.

37. Plaintiff requests the Court to enter declaratory judgment that the equity interest in the Firm, together with all of the assets of the Firm, including cash, accounts receivable, bank

accounts, etc., are property of the estate and that the Trustee, on behalf of the estate, may exercise all legal rights and remedies associated with the being the sole shareholder of the Firm.

38. Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

39. On the Petition Date, the Debtor owned 100% of the equity interest in the Firm. Although the Debtor scheduled the value of the equity interest to be zero on the Petition Date, events subsequent to the Petition Date have caused the equity interest to increase in value, including the Firm's receipt of a net contingency fee and accrual (and potential collection) of accounts receivable. The Firm has very few current liabilities other than accrued wages owed to the Debtor and/or any professional or administrative staff, such that the overall value of the equity in the Firm has increased since the Petition Date.

40. Debtor has not made any claim to exempt the equity interest in the Firm from property of the estate, although Debtor has alleged that the Texas Business Organizations Code effectively prevents the Trustee from administering the equity interest on behalf of the estate because he is not an authorized person who may own shares in or exercise authority over a professional corporation.

41. Texas law establishes that a sole shareholder is the beneficial owner of corporate property and may deal with such property so long as the rights of creditors are not prejudiced, notwithstanding a charter, by-law, or statutory provision placing power of management in a board of directors or requiring formal action by a board of directors. *Newman v. Toy*, 926 S.W.2d 629, 631 (Tex. App. – Austin 1996, *reh'g overruled*). The shareholders of a corporation are the equitable owners of its assets. *Martin v. Martin, Martin & Richards, Inc.*, 12 S.W.3d 120, 124 (Tex. App. – Fort Worth 1999, *no pet*) (citing *Rapp v. Felsenthal*, 628 S.W.2d 258, 260 (Tex.

App. – Fort Worth 1982, *writ ref'd n.r.e*)). In such a case, only the corporation's creditors have standing to object to the lack of proper action by the board of directors. *Martin*, 12 S.W.3d at 124; *Newman*, 926 S.W.2d at 631; *see also Zorn v. Brooks*, 83 S.W.2d 949, 951 (1935); *In re Estate of Trevino*, 195 S.W.3d 223, 230 (Tex. App. – San Antonio 2006, *no pet*).

42. The character of a professional corporation does not shield the equity in the professional corporation from ordinary creditor collection mechanisms available under Texas law, and such equity may properly be subject to turnover to a receiver appointed by a Texas court. *Newman*, 926 S.W.2d at 631. Upon transfer of the shares of a sole shareholder in an entity to a receiver, the receiver succeeds to the sole shareholder's rights and powers as sole shareholder except as limited or qualified by the terms of the order appointing receiver. *Id*.

43. The receiver, appointed under Texas law, may step into the shoes of the sole shareholder and administer the property of the corporation, including its assets and liabilities, notwithstanding the statutory limitations defining authorized persons who may hold shares of and manage a professional corporation. *Id*. The limitations placed upon the ownership and management of professional corporations are police-power regulations and are not intended to restrict the power of a receiver appointed for the purpose of collecting on behalf of a judgment creditor. *Id*. The limitations do require, however, that the receiver's sale of the shares, if such a sale is to occur, must be to an authorized person as defined by the statute. *Id*.

44. A substantial and actual controversy exists between and among the Trustee, Debtor, and the Firm as to whether the Trustee, as successor to the Debtor's sole shareholder interest in the Firm on the Petition Date, may take title to the equity interest and exercise managerial control over the Firm in order to exercise authority over Firm assets, pay Firm creditor claims, and monetize the value of the equity for the benefit of the estate, similar to a

receiver appointed under Texas law to collect a debt for a judgment creditor through turnover. A substantial and actual controversy also exists to determine whether the Debtor may shield from the estate the value of the equity in a professional corporation, despite the lack of a state or federal law basis to exempt the equity interest from creditor collection, as earnings from services performed by an individual debtor after the commencement of the case under Section 541(a)(6). 11 U.S.C. § 541(a)(6).

45.    A declaration of the rights of the parties as to the equity interest in the Firm is needed promptly. Specifically, Trustee requests a declaration that: (i) the equity constitutes property of the estate; (ii) that the Trustee may exercise control over the Firm and its assets as its sole shareholder in order to liquidate the value of the Debtor's equity in the Firm for the estate; (iii) that the benefit to the estate generated by the Trustee's liquidation of the Firm is not proceeds, product, offspring, rents, or profits from property of the estate that are earnings from services performed by the Debtor after the commencement of the case; and finally (iv) that the Debtor has no right or claim to the equity and any value that the equity interest may add to the estate.

46.    Accordingly, this Court should grant, pursuant to 28 U.S.C. § 2201, Fed. R. Bankr. P. 7001, and Section 541 of the Bankruptcy Code, the declaratory relief requested above and such other and further relief as may be necessary to enforce the Trustee's rights in the equity.

### Count Two:
### Turnover (Debtor & Firm)

47.    Plaintiff incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

48.    Section 542(a) provides that "an entity, other than a custodian, in possession, custody, or control during the case, of property that the trustee may use, sell, or lease under

section 363 of this title, …, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a).

49. The Debtor's equity interest in the Firm is property of the estate, and the value of the equity interest, which is the Firm's net asset value after satisfaction of Firm creditor claims, should be available for the payment of creditor claims against the bankruptcy estate of the Debtor.

50. The Debtor disputes the estate's entitlement to the equity interest in the Firm and has failed and refused to turnover possession, custody, and control over the equity interest to the Trustee as required under the Bankruptcy Code.

51. Plaintiff requests the Court to enter judgment requiring Debtor to turnover and deliver to the Trustee the equity interests in the Firm, including without limitation the actual stock certificates and/or other indicia of the equity interests and any and all governing documents, shareholder agreements, or other agreements related to the Firm and its management, the Firm's business records and corporate book, the Firm's financial records, including accounts receivable statements and collection information, and control over all Firm cash, cashier's checks, and bank accounts.

52. Plaintiff also requests the Court to enter judgment requiring the Firm to turnover and deliver to the Trustee possession, custody, and control of all assets of the Firm, including without limitation cash on hand, the net contingency fee collected at the conclusion of the Firm's representation of the Clients in the Arizona Litigation, any payments collected on accounts receivable owed to the Firm, and any and all records of accounts receivable owed to the Firm.

53. Plaintiff also requests the Court to enter judgment requiring the Firm to turnover and deliver to the Trustee an accounting of the Firm's assets and liabilities from the Petition Date through the date of judgment.

### Count Three:
### Temporary Restraining Order and Temporary Injunction (Debtor & Firm)

54. Plaintiff incorporates each of the foregoing paragraphs by reference as if fully set forth herein verbatim.

55. The Trustee has reason to believe that the Net Fee and other assets of the Firm are at risk and/or have been diminished since the Petition Date notwithstanding the Debtor's agreement to preserve the fee and maintain the status quo. The Debtor and the Firm have refused to provide the Trustee with any proof of funds that would assuage the Trustee's concern about the security of the funds.

56. As set forth above, the Net Fee represents a substantial portion of the value of the equity interest in the Firm. The Trustee and estate would be substantially harmed should the Net Fee be dissipated between now and the conclusion of this adversary proceeding.

57. Trustee respectfully requests the Court enter a temporary restraining order and a temporary injunction precluding the Firm from using, selling, or leasing its assets other than in the ordinary course of business during the pendency of this action, provided that the total net asset value of the Firm shall not be reduced below the amount of $65,000 without prior authority from this Court.

58. In order to accomplish this result, the Trustee respectfully requests that the Court order the Firm to transfer all cash and funds in Firm accounts to the Trustee to be held in trust on behalf of the Firm pending resolution of this adversary proceeding, including all collections and moneys the Firm may receive in the future. The Trustee requests that the order allow the Firm to

present the Trustee, on reasonable notice, with invoices, requests for payment, and requests for compensation for all accounts payable the Firm may incur during the pendency of the adversary proceeding, which the Trustee shall pay subject to his approval of the requested item as a reasonable Firm expense in his business judgment. If a dispute arises with respect to a specific expenditure, the Firm may seek emergency relief from this Court to approve or disapprove the expense.

59. Additionally, and in order to protect the rights of clients of the Firm who are innocent third-parties in this dispute, the Trustee requests that the order authorize the Debtor to reach separate agreements to represent former clients of the Firm as a sole practitioner should Firm clients elect to terminate their engagement agreements with the Firm, which is their right, provided that any accounts receivable accrued by the clients prior to the date of termination shall remain property of the Firm and may only be collected by the Firm. The Trustee does not intend to take on representation of clients of the Firm and does not oppose any protective order or provision that may be necessary to protect attorney-client privileged communications between the Debtor and clients of the Firm.

60. No other adequate remedy at law exists, particularly since the Debtor refused to try the dispute as a contested matter in order to expedite its resolution and has refused to reach a mutually agreeable status quo arrangement with the Trustee. The Trustee and the estate will suffer irreparable injury should the Court not grant the injunctions requested herein and the Debtor be left in control over the assets of the Firm and the means to dissipate those assets while refusing to provide any accounting to the Trustee to prove their security. For all the reasons set forth above, the Trustee is likely to succeed on the merits and a balance of the equities weighs heavily in Trustee's favor.

## V. PRAYER

WHEREFORE, PREMISES CONSIDERED, Trustee respectfully requests that citation issue and process be served on Defendants and that, upon final hearing, Trustee have and recover judgment from and against Defendants, in an amount to be determined at trial, for declaratory judgment and turnover as requested herein, for reasonable and necessary attorney's fees incurred by Trustee in prosecuting this action to the extent allowed under applicable law, for costs and expenses of suit herein, for pre-judgment and post-judgment interest on all monetary relief sought herein at the highest rates allowed by law, for a temporary restraining order and temporary injunction as requested herein, and for such other and further relief to which Trustee may be justly entitled.

Dated: September 14, 2016.

*/s/ Melanie P. Goolsby*
Gerrit M. Pronske
State Bar No. 16351640
Melanie P. Goolsby
State Bar No. 24059841
**PRONSKE GOOLSBY & KATHMAN, P.C.**
901 Main Street, Suite 610
Dallas, Texas 75202
(214) 658-6500 – Telephone
(214) 658-6509 – Facsimile
Email: gpronske@pgkpc.com
Email: mgoolsby@pgkpc.com

**COUNSEL FOR THE TRUSTEE**