Gerrit M. Pronske
State Bar No. 16351640
Melanie P. Goolsby
State Bar No. 24059841
**PRONSKE GOOLSBY & KATHMAN, P.C.**
901 Main Street, Suite 610
Dallas, Texas 75202
(214) 658-6500 – Telephone
(214) 658-6509 – Facsimile
Email: gpronske@pgkpc.com
Email: mgoolsby@pgkpc.com

**COUNSEL FOR THE TRUSTEE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **CASE NO. 16-30427-bjh-7** |
| **SHAWN ERIC SHEARER.,** | § | |
| | § | **CHAPTER 7** |
| Debtor. | § | |
| | § | |
| **SCOTT SEIDEL, Chapter 7 Trustee,** | § | |
| | § | |
| Plaintiff | § | **Adversary No. _____** |
| v. | § | |
| | § | |
| **THE SHEARER LAW GROUP P.C. and** | § | |
| **SHAWN ERIC SHEARER,** | § | |
| | § | |
| Defendant. | § | |

### DECLARATION OF MELANIE P. GOOLSBY IN SUPPORT OF
### PLAINTIFF'S ORIGINAL COMPLAINT AND APPLICATION FOR
### TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

MELANIE P. GOOLSBY, pursuant to 28 U.S.C § 1746, states under penalty of perjury:

1.     "I am over twenty-one (21) years of age. I have never been convicted of a crime of moral turpitude. I am fully competent to make this Declaration. I have personal knowledge of the facts set forth in this Declaration.

2.     I am an attorney licensed to practice law in the state of Texas and admitted to appear in the United States Bankruptcy Court for the Northern District of Texas. My firm has

**DECLARATION OF MELANIE P. GOOLSBY IN SUPPORT OF PLAINTIFF'S ORIGINAL COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION – Page 1 of 8**

been engaged to represent Scott Seidel, Chapter 7 Trustee in the above referenced bankruptcy case (the "Trustee").

3. I make this declaration in support of the Trustee's request for a temporary restraining order in his Original Complaint and Application for Temporary Restraining Order and Temporary Injunction.

4. Prior to the 341 Meeting, the Debtor agreed with the Trustee to maintain the status quo concerning Net Fee received by the Firm and agreed that the Firm would not spend the Net Fee funds held by the Firm, as affirmed by the Debtor on the record at a hearing on August 29, 2016.

5. On June 22, 2016, the Trustee filed a motion to obtain an order under Section 542(a) of the Bankruptcy Code directing Shawn Eric Shearer, debtor in the above-captioned bankruptcy case (the "Debtor"), to turnover to the Trustee the equity interest in the Firm and the sole shareholder authority to manage the assets of the Firm.[1]

6. On August 26, 2016, the Friday before the hearing on the Trustee's turnover motion, I participated in a number of phone conferences with the Debtor to discuss the dispute underlying the Trustee's motion. During the course of our phone calls, the Debtor disclosed, for the first time, that the $65,000 Net Fee *was not held in a Firm bank account, but rather was held generally "in the Firm" in cash and cashier's checks*. The Debtor provided no explanation for why the Net Fee was held in cash and cashier's checks rather than in a Firm bank account and could not give me a specific accounting of the amount of cash and the amount of cashier's checks held by the Firm. By the conclusion of the our calls the afternoon of August 26, 2016, the Debtor had assured me that the full amount of the Net Fee would be deposited into a Firm account within the next 24 hours and that he would provide confirmation of same to me.

---

[1] Capitalized terms not defined herein shall have the same meaning ascribed to them in the Complaint.

**DECLARATION OF MELANIE P. GOOLSBY IN SUPPORT OF PLAINTIFF'S ORIGINAL COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION – Page 2 of 8**

7.      After concluding the phone calls, I took two important steps to ensure the security of the Net Fee in light of the Debtor's disclosures over the phone. First, I advised the Debtor via email to cease and desist from all transfers and transactions on behalf of the Firm and to prepare an accounting of Firm transactions from the Petition Date through the date of the hearing. A true and correct copy of counsel's August 26, 2016 email is attached hereto as **Exhibit A**. Second, the Trustee served a trial subpoena to the Debtor instructing the Debtor to bring to the hearing on August 29, 2016 all cash, cashier's checks, and cash equivalents of the Firm (mistakenly identified as The Shearer Law Firm, PC) as well as statements and/or electronic bank records of all Firm accounts as of August 29, 2016. A true and correct copy of the trial subpoena is attached hereto as **Exhibit B**.

8.      A little over two hours after service of the subpoena on the Debtor, the Debtor responded to me by email to say that "I have received your e-mail and subpoena and will be working to provide you everything requested." A true and correct copy of the Debtor's responsive August 26, 2016 email is attached hereto as **Exhibit C**. The Debtor attached a handful of Firm corporate documents, including the Bylaws and stock ledger, but concluded his email assuring the Trustee and counsel that "[m]ore e-mails will be forthcoming with the additional information you requested, *including proof that the $65,000 is available as indicated numerous times over the last six-months to Mr. Seidel, Ms. Goolsby, and Mr. Pronske*."

9.      Notwithstanding his assurance of additional emails with the requested information, the Debtor emailed Trustee and counsel, on August 28, 2016 at 11:47 p.m., that he had complied with everything that he could and would have in his possession at the August 29, 2016 hearing, among other things, bank records showing Firm account balances as of August 28,

2016 exceeding $65,000. A true and correct copy of the Debtor's August 28, 2016 email is attached hereto as **Exhibit D**.

10.     The morning of August 29, 2016, Debtor filed a Motion to Quash the trial subpoena, a true and correct copy of which is attached hereto as **Exhibit E**, raising a number of objections to the subpoena. [Bankr. Docket No. 40] The Debtor objected that he was not aware of any entity named The Shearer Law Firm, PC, although the subpoena was obviously intended to reference the Firm within the context of the course of discussions between the parties on August 26, 2016. The Debtor also objected that it was unreasonable to produce bank statements as of August 29, 2016 since the banking day did not conclude until after the time the hearing was to begin, ignoring the subpoena's request for *electronic* bank records as of August 29, 2016, which may be generated at any time via access to the online account. Finally, the Debtor objected that the subpoena demanded production of attorney-client privileged communications, although there may be nothing privileged about the production of cash and cashier's checks, and electronic records showing bank balances contain no privileged communications. As of the date of this Complaint, the Debtor has not yet set a hearing on his Motion to Quash and has not obtained an order relieving him from his obligations under the subpoena.

11.     At the hearing on the Trustee's Motion held on August 29, 2016, the Debtor objected to the Bankruptcy Court adjudication of the Trustee's rights with respect to the equity interest without an adversary proceeding, and, on that basis, the Bankruptcy Court entered an order denying the Trustee's motion without prejudice. A true and correct copy of the August 29, 2016 hearing transcript is attached hereto as **Exhibit F**.

12.     On the record at the hearing, the Debtor indicated his consent to continue to maintain the status quo concerning the Net Fee and agreement to not spend the Net Fee held by

**DECLARATION OF MELANIE P. GOOLSBY IN SUPPORT OF PLAINTIFF'S ORIGINAL COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION – Page 4 of 8**

the Firm, but equivocated as to the period of time to which the Debtor would continue to so agree:

> MR. SHEARER:  No, I -- I can continue to comply with that.  But I just need to advise them that at some point, I may need to seek an order that allows me to -- my firm to use those funds.  Because the position, you know, is that those funds are not property of the estate, and that they are the proceeds of

> my post petition labor.  And the trustee really doesn't have a right to tell me what to do with them.
>
> So -- I mean I can -- I can handle that for, you know, a period of time, but, you know, the fresh start is becoming a stale start.  It's -- it's -- this is taking too long for me to keep sitting on this, and try to support the practice.  And -- so, you know, if they can get it filed, and we can do this the right way quickly, you know, I can do that for, you know, another month or so.  But at some point, I'm going to need to press the issue.

(Transcript, pp.28-9)

13.     The Debtor also stated that the Firm has outstanding invoices that require payment and purchases to make, including payment on a malpractice insurance policy, a Lexis-Nexis bill, and the purchase of toner and paper. (Transcript, pp.27-8)

14.     As recommended by the Bankruptcy Court, I reached out to the Debtor after the conclusion of the hearing to arrange a meeting to discuss the parties' dispute and the terms of a

**DECLARATION OF MELANIE P. GOOLSBY IN SUPPORT OF PLAINTIFF'S ORIGINAL COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION – Page 5 of 8**

mutually aggregable status quo arrangement. I also requested the Debtor bring to the meeting the outstanding Firm invoices and/or statements referenced on the record at the hearing, a proposed operating budget for the Firm, and, again, documentary proof of the security of the Net Fee in a Firm account, such as a print-off from an online banking statement showing the account balance with $65,000 or more. On a late afternoon phone call on August 29, 2016, *after* the Debtor had filed his Motion to Quash, the Debtor agreed to meet with counsel for the Trustee as requested the following day, on August 30, 2016 at 10:30 a.m. (later rescheduled at Debtor's request to 4:00 p.m.), and *agreed to provide the documentation requested by the Trustee, including specifically proof of deposits in a Firm account in excess of $65,000*.

15. On the day of the meeting, at 3:22 p.m., the *Debtor cancelled the scheduled 4 p.m. meeting* via email, citing scheduling conflicts and personal obligations that prevented him from keeping the appointment. A true and correct copy of the Debtor's email is attached hereto as **Exhibit G**.

16. I immediately responded to Debtor's email cancelling the meeting and offered to reschedule the meeting to the following Tuesday, September 6, 2016 (and then later to the morning of August 31, 2016 by separate email). I also repeated my request to see proof of a bank balance of at least $65,000, which Debtor had agreed to provide at the cancelled meeting. A true and correct copy of my email is attached hereto as **Exhibit H**. By separate email, Mr. Pronske also requested the Debtor to immediately provide proof of funds via email since the Debtor had cancelled the meeting at which he agreed to provide such proof. A true and correct copy of Mr. Pronske's August 30, 2016 email is attached hereto as **Exhibit I**.

17. Over the next two days, email correspondence between the Debtor and counsel for the Trustee continued to occur, in which the Debtor persisted in his refusal to provide any

**DECLARATION OF MELANIE P. GOOLSBY IN SUPPORT OF PLAINTIFF'S ORIGINAL COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION – Page 6 of 8**

proof of funds in Firm accounts in the amount of the Net Fee and his refusal to respond to counsel's request to set a meeting the following week after Mr. Pronske and I returned from travelling to attend oral argument before the United States Court of Appeal for the Fifth Circuit in an unrelated case.

18.     As of the date of the Complaint, the Debtor has failed and refused to provide the Trustee with documentary proof of funds showing that the Net Fee is deposited in a Firm account and has failed and refused to meet with the Trustee to discuss a status quo arrangement pending resolution of the dispute over the ownership of the Firm.

19.     **To recap:** In a phone conference late in the day on August 26, 2016, the Debtor disclosed for the first time that the Net Fee was held in cash and/or cashier's checks and not in a bank account, but also assured the Trustee that the funds would be on deposit within 24 hours from their phone conference. In light of the Debtor's disclosure, the Trustee, through his counsel, has made no fewer than five separate requests to Debtor to provide proof of retention of the Net Fee in a Firm bank account beginning August 26, 2016 through September 1, 2016. The Debtor agreed to provide the requested proof of funds on August 26, 2016, August 28, 2016, and again on August 29, 2016, *after* he had filed a Motion to Quash the Trustee's subpoena. But at each point where the Debtor had agreed to produce the proof of funds, the Debtor made excuses for why such proof was not available, refused to comply with his earlier agreement, or simply ignored the request. Despite the Bankruptcy Court's instructions to meet and confer and the repeated requests of counsel for the Trustee, the Debtor has refused to meet with the Trustee and his counsel to discuss a mutually agreeable arrangement to preserve the Net Fee and provide for Firm operations during the pendency of the Trustee's inevitable lawsuit. The Trustee must therefore seek relief from the Bankruptcy Court as requested in the Complaint.

20.    I reserve the right to supplement this Declaration."

I certify under penalty of perjury that the foregoing is true and correct.

Dated: September 14, 2016.                 */s/ Melanie P. Goolsby*
                                           Meanie P. Goolsby

**Thursday, September 8, 2016 at 12:55:04 PM Central Daylight Time**

**Subject:** In re Shearer (TXNB 16-30427) - Turnover Motion

**Date:** Friday, August 26, 2016 at 5:23:39 PM Central Daylight Time

**From:** M Goolsby

**To:** Shawn Shearer

**CC:** Scott Seidel, G Pronske

**Priority:** High

Mr. Shearer,

As we discussed in our phone conference just now, the Trustee intends to request the Bankruptcy Court at the hearing setting on Monday to enter an order compelling you to turnover 100% of the stock and any indicia of stock in The Shearer Law Group, PC (the "PC"), including without limitation all stock certificates and proof of shares as well as all corporate books and records (such as governance documents, other agreements relating to the PC stock) as well as any and all financial records of the PC, including bank statements for all accounts held by the PC from the Petition Date to the current date. The stock in the PC is unquestionably property of the estate under Section 541(a) of the Bankruptcy Code. There is no factual dispute that you were the owner and holder of 100% of the stock in the PC on the Petition Date, and you allege no basis to exempt the stock interest in the PC from creditor collection. Furthermore, the Trustee, as an attorney licensed to practice law in the state of Texas, is properly considered an "authorized person" under TBOC Section 301.004 who may be a holder of the stock in a professional corporation under Texas law. There can be no real dispute that the Trustee is entitled to this relief and has full authority to begin the process of liquidating the PC.

After our call this afternoon, we are now very concerned that assets of the PC have been misused and/or diminished in violation of applicable bankruptcy law and contrary to your agreement with the Trustee to preserve PC assets pending administration of your bankruptcy case. In connection with the Trustee's request for turnover of the stock in the PC, the Trustee advises you as President and Director of the PC to **immediately** cease and desist from any and all transfers or transactions on behalf of the PC and further requests you to prepare an accounting on behalf of the PC for all transactions of the PC from February 1, 2016 (the Petition Date) through and including Monday, August 29 to be produced to the Trustee and his counsel no later than **Monday, August 29, 2016 at 10:00 a.m.** The Trustee reserves any and all rights and remedies he may have against you personally and/or as the director and officer of the PC under applicable bankruptcy and Texas law in connection with the use of PC corporate assets, including the right to revoke your discharge.

Thank you for your cooperation in this very serious matter. Please feel free to call me (214-412-8446) or Gerrit (214-762-1100) over the weekend if you wish to discuss resolution.

**Melanie P. Goolsby**
Pronske Goolsby & Kathman, P.C.
901 Main Street, Suite 610
Dallas, Texas 75202
Direct:  214.658.6512
Main: 214.658.6500
Fax: 214.291.2665
mgoolsby@pgkpc.com

This electronic message contains information from the law firm of Pronske Goolsby & Kathman, P.C. that may be privileged and confidential.  The information is intended for the use of the addressee(s) only.  If you are not an addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited.  If you have received this e-mail in error, please contact the sender at the number or e-mail listed above and delete it immediately from your system.

**EXHIBIT**

**A**

Page 1 of 1

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

__Northern__      District of    __Texas__

In re __Shawn Eric Shearer__
       Debtor

Case No. __16-30427-bjh-7__

*(Complete if issued in an adversary proceeding)*

Chapter __7__

_____
           Plaintiff

Adv. Proc. No. _____

v.

_____
           Defendant

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: __Shawn Eric Shearer__
                             *(Name of person to whom the subpoena is directed)*

☑ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: All cash, cashier's checks, and cash equivalents of The Shearer Law Firm, PC.
      Statements and/or electronic bank records of all bank accounts of The Shearer Law Firm, PC as of August 29, 2016.

| PLACE United States Bankruptcy Court, Earl Cabell Federal Building 1100 Commerce Street, 14th Floor, Courtroom #2, Dallas, Texas | DATE AND TIME August 29, 2016 at 1:15 p.m. |
|---|---|

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

      The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: __August 26, 2016__

CLERK OF COURT

                                OR      *Melanie Goolsby*

_____                      _____
     *Signature of Clerk or Deputy Clerk*                        *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
__Scott Seidel, Chapter 7 Trustee__ , who issues or requests this subpoena, are:
Melanie Goolsby, 901 Main Street, Suite 610, Dallas, Texas 75202, mgoolsby@pgkpc.com, 214-658-6512

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

EXHIBIT

B

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i) is a party or a party's officer; or
  (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
 (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
 *(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 *(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
 *(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.
 *(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  (i) disclosing a trade secret or other confidential research, development, or commercial information; or

  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 *(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 *(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 *(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 *(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 *(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
 *(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i) expressly make the claim; and
  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 *(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
 …

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**Subject:** Re: In re Shearer (TXNB 16-30427) - Turnover Motion - Response # 1
**Date:** Sunday, August 28, 2016 at 11:47:04 PM Central Daylight Time
**From:** Shawn Shearer
**To:** M Goolsby
**CC:** Scott Seidel, G Pronske

Melanie - I have complied everything that I can.  I will have in my possession at tomorrow's hearing the following: (i) the corporation's minute book with all certificates of incorporation, bylaws, minutes, tax documents, employment agreements, stock ledger, etc. (ii) bank records showing balances as of 8/28 (balances as of 8/29 as demanded are impossible because the we have a hearing at 1:15 on that day), which will address your concerns about funds availability, the balances exceed $65,000; and (iii) complete monthly statements for The Shearer Law Group, P.C.'s operating account and IOLTA account since February 1, 2016. The bank account transactions reflected in those monthly statements are a full accounting of all of the transactions entered by The Shearer Law Group, P.C. since 02/01/2016.

In reviewing you e-mail, I am confused about your reference to an " an order compelling you to turnover 100% of the stock in The Shearer Law Group."  All I see on the record is a motion "compelling the Debtor to turnover and surrender to the Trustee the contingency fee paid to The Shearer Firm." Have I missed a filing?

There will be discussion tomorrow about the attorney-client issues involved with the bank statements, as well as a discussion as to whether Mr. Seidel (representative of the estate) is permitted to take ownership of the shares as an individual, when the case law says that the estate is separate and distinct from the trustee.  Nevertheless, the documents I have been able to collect over this short 48 hours will be available.

The Shearer Law Group has only one professional and only one person billing, that is me.  Section 542(a)(6) and In re Sholdra govern.  All of the revenue of The Shearer Law Group, P.C. since February 1, 2016 is not property of the estate under the earnings exception of 541(a)(6). So, if post-petition earnings from the debtor's labor are not property of the estate (the issue set for hearing tomorrow in connection with the turnover motion), I have an obligation to object to producing client information contained in the bank statements. The statements will be there for you to take, if that is the way things play-out.


- Shawn Shearer

---

**From:** Shawn Shearer <shearershawn@hotmail.com>
**Sent:** Friday, August 26, 2016 7:57 PM
**To:** M Goolsby
**Cc:** Scott Seidel; G Pronske
**Subject:** In re Shearer (TXNB 16-30427) - Turnover Motion - Response # 1

I have received your e-mail and subpoena and will be working to provide you everything requested.  Please note, that you are sending communications and subpoenas to the Shearer Law Group, rather than the debtor.

EXHIBIT

C

Page 1 of 3

For my initial response, I am including for you copies of The Shearer Law Group, P.C.'s corporate documentation, including certificate of formation, bylaws, annual minutes, and stock ledger.  As you will note in Organizational Minutes, The Shearer Law Group elected to maintain certificate-less shares.  Thus, I have included a copy of the stock ledger.  The only shares that were issued were the original 1,000 shares and they are only recorded on the ledger.

I do want to clarify that none of the information you describe in your initial e-mail as being discussed on our phone call actually was discussed.  The following statement included in your e-mail was not made by either you or Mr. Pronske during any calls today. The first I heard of this position was at 5:23 p.m. this Friday afternoon.

 "The Trustee intends to request the Bankruptcy Court at the hearing setting on Monday to enter an order compelling you to turnover 100% of the stock and any indicia of stock in The Shearer Law Group, PC (the "PC"), including without limitation all stock certificates and proof of shares as well as all corporate books and records (such as governance documents, other agreements relating to the PC stock) as well as any and all financial records of the PC, including bank statements for all accounts held by the PC from the Petition Date to the current date."

That not withstanding, I will comply with your requests to the best of my abilities over the next 60 hours, just like I have complied with every prior request by the Trustee.

You have demanded "the Trustee advises you as President and Director of the PC to **immediately** cease and desist from any and all transfers or transactions on behalf of the PC."  This demand ignores the basic ethics of practice as a lawyer.  None of the clients of The Shearer Law Group have consented to be represented by Mr. Seidel.  I continue to have an obligation to represent these clients.  To make sure that there is no confusion, I will represent these clients in a solo practitioner status, as I am not required to continue labor for the benefit of the corporation.  To require otherwise is a violation of the 13th Amendment.  In addition, it violates the legal ethical rules allowing the client to choose their own representation.  No client of The Shearer Law Group has chosen Mr. Seidel as their counsel, and Mr. Seidel has not consented to represent any clients of The Shearer Law Group, and has not even run conflicts checks against that client list.

I disagree with your assessment that Scott Seidel may own the shares of The Shearer Law Group, as he is merely trustee of an estate, and the estate itself is not authorized to practice law.  The professional status or licensing of the appointed trustee cannot affect the legal rights of the debtor.  If the professional corporation practiced medicine, and Mr. Seidel was appointed trustee, none of the arguments you raised would be applicable.  Different legal treatment between professions violates the equal protection clause of the US and Texas constitutions, and these issues were raised in the debtor's response to your motion.  Mr. Seidel could not take possession of a doctor's professional corporation.  If Mr. Seidel is allowed to take ownership of a legal practice, but not that of a medical practice, the legal treatment of professional corporations practicing medicine as opposed to those practicing law is significantly different. If a non-attorney had been appointed trustee in this case, all of your legal theories would fall apart. To be clear, you have suggested that merely because Mr.Seidel has a law license he is entitled to treat a professional corporation and debtor practicing law differently than he could treat a professional corporation and debtor practicing medicine.  The violation of equal protection under the US and Texas constitutions is clear and self-evident.

If Mr. Seidel (individually, as he is appointed trustee as individual) owns this corporation personally, he is required to assume joint and several liability for The Shearer Law Group, P.C.'s practice under Texas Business and Organizations Code Section 301.010. In addition, Mr. Seidel must have in place the proper mechanisms to assure that he has avoided conflicts of interest over the last six months with respect his own clients and those of The Shearer Law Group.

As Mr. Pronske admitted in our call today, several times, the Trustee's position is that I am an employee of The Shearer Law Group and entitled to take salary.

More e-mails will be forthcoming with the additional information you requested, including proof that the $65,000 is available as indicated numerous times over the last six-months to Mr. Seidel, Ms. Goolsby and Mr. Pronske.

**S- - Shawn Shearer**

**Subject:** In re Shearer (TXNB 16-30427) - Turnover Motion - Response # 1
**Date:** Friday, August 26, 2016 at 7:57:18 PM Central Daylight Time
**From:** Shawn Shearer
**To:** M Goolsby
**CC:** Scott Seidel, G Pronske
**Attachments:** 01 Certificate of Formation.pdf, 02 Bylaws.pdf, 03 Organizational Minutes.pdf, 04 FY 2013 Annual Meeting.pdf, 05 FY 2014 Annual Meeting.pdf, 06 FY 2015 Annual Meeting.pdf, 07 Stock Ledger.pdf

I have received your e-mail and subpoena and will be working to provide you everything requested. Please note, that you are sending communications and subpoenas to the Shearer Law Group, rather than the debtor.

For my initial response, I am including for you copies of The Shearer Law Group, P.C.'s corporate documentation, including certificate of formation, bylaws, annual minutes, and stock ledger. As you will note in Organizational Minutes, The Shearer Law Group elected to maintain certificate-less shares. Thus, I have included a copy of the stock ledger. The only shares that were issued were the original 1,000 shares and they are only recorded on the ledger.

I do want to clarify that none of the information you describe in your initial e-mail as being discussed on our phone call actually was discussed. The following statement included in your e-mail was not made by either you or Mr. Pronske during any calls today. The first I heard of this position was at 5:23 p.m. this Friday afternoon.

 "The Trustee intends to request the Bankruptcy Court at the hearing setting on Monday to enter an order compelling you to turnover 100% of the stock and any indicia of stock in The Shearer Law Group, PC (the "PC"), including without limitation all stock certificates and proof of shares as well as all corporate books and records (such as governance documents, other agreements relating to the PC stock) as well as any and all financial records of the PC, including bank statements for all accounts held by the PC from the Petition Date to the current date."

That not withstanding, I will comply with your requests to the best of my abilities over the next 60 hours, just like I have complied with every prior request by the Trustee.

You have demanded "the Trustee advises you as President and Director of the PC to *immediately* cease and desist from any and all transfers or transactions on behalf of the PC." This demand ignores the basic ethics of practice as a lawyer. None of the clients of The Shearer Law Group have consented to be represented by Mr. Seidel. I continue to have an obligation to represent these clients. To make sure that there is no confusion, I will represent these clients in a solo practitioner status, as I am not required to continue labor for the benefit of the corporation. To require otherwise is a violation of the 13th Amendment. In addition, it violates the legal ethical rules allowing the client to choose their own representation. No client of The Shearer Law Group has chosen Mr. Seidel as their counsel, and Mr. Seidel has not consented to represent any clients of The Shearer Law Group, and has not even run conflicts checks against that client list.

I disagree with your assessment that Scott Seidel may own the shares of The Shearer Law Group, as he is merely trustee of an estate, and the estate itself is not authorized to practice law. The professional status or licensing of the appointed trustee cannot affect the legal rights of the debtor. If the professional corporation practiced medicine, and Mr. Seidel was appointed trustee, none of the arguments you raised would be applicable. Different legal treatment between professions violates the equal protection clause of the US and

EXHIBIT

D

Texas constitutions, and these issues were raised in the debtor's response to your motion.  Mr. Seidel could not take possession of a doctor's professional corporation.  If Mr. Seidel is allowed to take ownership of a legal practice, but not that of a medical practice, the legal treatment of professional corporations practicing medicine as opposed to those practicing law is significantly different. If a non-attorney had been appointed trustee in this case, all of your legal theories would fall apart. To be clear, you have suggested that merely because Mr.Seidel has a law license he is entitled to treat a professional corporation and debtor practicing law differently than he could treat a professional corporation and debtor practicing medicine.  The violation of equal protection under the US and Texas constitutions is clear and self-evident.

If Mr. Seidel (individually, as he is appointed trustee as individual) owns this corporation personally, he is required to assume joint and several liability for The Shearer Law Group, P.C.'s practice under Texas Business and Organizations Code Section 301.010. In addition, Mr. Seidel must have in place the proper mechanisms to assure that he has avoided conflicts of interest over the last six months with respect his own clients and those of The Shearer Law Group.

As Mr. Pronske admitted in our call today, several times, the Trustee's position is that I am an employee of The Shearer Law Group and entitled to take salary.

More e-mails will be forthcoming with the additional information you requested, including proof that the $65,000 is available as indicated numerous times over the last six-months to Mr. Seidel, Ms. Goolsby and Mr. Pronske.

**S- - Shawn Shearer**

Shawn Shearer
3001 Sale Street #321
Dallas, Texas 75219
Tele: (214) 434-1594
Debtor

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

In re:

SHAWN ERIC SHEARER,

    Debtor.

Chapter 7

No. 16-30427-bjh-7

**MOTION TO QUASH SUBPOENA**

    Shawn Eric Shearer, debtor in the above referenced case (the "Debtor"), files this Objection to Subpoena. At 5:50 p.m. August 26, 2016 the Debtor received the attached Subpoena to Produce documents by 1:15 p.m. on August 29, 2016, a period of just 67 hours. In particular, the Subpoena requested that Shawn Eric Shearer produce the following:

> All cash, cashier's checks, and cash equivalents of the Shearer Law Firm, PC. Statements and/or electronic bank records of all bank accounts of The Shearer Law Firm, PC as of August 29, 2016.

    The Debtor notes that under Fed. R. Civ. Proc. 45(d)(2)(b) compliance with the requirements of a subpoena are not required when the subpoena is subject to objection. The Debtor objects to this request on the following grounds.

1. The Debtor is not aware of any entity known as The Shearer Law Firm, PC and has no documents to produce in response to such request.

2. The Debtor further objects as follows:

    a. The time frame specified in the subpoena is unreasonable. Fed. R. Civ. Proc. 45(d)(3)(A)(iii). First, it is impossible to produce banking documents at 1:15 pm on August 29th that reflect the status of

**MOTION TO QUASH SUBPOENA**

EXHIBIT

E

accounts "as of August 29, 2016" as requested in the subpoena. The August 29th, Monday, banking day will not be completed at the 1:15 pm time specified in the subpoena, making compliance with the request physically impossible. The best the Debtor could do is provide statements prior to the end of the August 29th banking day. Second, the subpoena requires production of more than seven months of financial information in just over 60 hours of receipt of the subpoena. Such a request is not reasonable, especially given the standard 14 days to object to subpoenas under Fed. R. Civ. Proc. 45.

b. The requested statements and/or electronic bank records contain information protected under the attorney client privilege, Fed. R. Civ. Proc. 45(d)(3)(A)(iii)

The subpoena requests documents from a professional corporation that is not a party to this proceeding and the Trustee has not properly joined the professional corporation in this case. *See* Bankruptcy Rule 7001; *In re Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990); *In re Interpictures, Inc.*, 86 B.R. 24, 29 (Bankr. E.D.N.Y. 1988); *In re Gold Leaf Corp.*, 73 B.R. 146, 147 (Bankr.N.D.Fla. 1987); *In re Ace Industries, Inc.*, 65 B.R. 199, 200 (Bankr.W.D. Mich. 1986); *In re Riding*, 44 B.R. 846, 858 (Bankr.D.Utah 1984). The assets and documents of the professional corporation are separate and apart from the assets and documents of the debtor. As this Court ruled in in *In re Sholandra* 270 BR 64, 67 (Bankr. N.D. Tex. 2001):

> A [professional association] is a separate entity from the estate. *Halverson v. Funaro (In re Funaro)*, 263 BR 892 (B.A.P. 8th Cir. 2001; *see also Parker v. Saunders (In re Bakersfield Westar, Inc.)*, 226 BR 227, 234 (B.A.P. 9th Cir. 1998).

c. The subpoena requests documents and information that is at the heart of the question of whether such documents are even property of the estate at all to be decided under Trustee's motion for turnover and objection to exemption that are scheduled to be heard by this Court on August 29, 2016 at 1:15 pm. The primary issue in the hearing is whether or not the assets of the professional corporation are assets of the estate. A decision on the fundamental issue to be heard by the Court should be entered before the Debtor is compelled to comply with a subpoena requesting documents that are not property of the estate, but the separate property of the professional corporation. If the operation of The Shearer Law Group, P.C. post-debtor's petition is unrelated to the Debtor's estate under the earnings exception of §541(a)(6), the requested information from The Shearer Law Group, P.C. is not subject to examination under Fed. Bankr. Rule 2004(b), as it is not related to the acts, conduct, or property or to the liabilities and financial condition of the debtor. The Trustee is trying to end run this Court's pending decision regarding what is, and what is not, property of the estate to be argued at the hearing scheduled for August 29th at 1:15 pm, by demanding production of documents that may, or may not, be subject to lawful production depending upon this Court's decision at the hearing scheduled for 1:15 p.m. on August 29th.

3. By e-mail on August 26, 2016 at 5:23 pm, counsel for the Trustee directed the Debtor to:

> In connection with the Trustee's request for turnover of the stock in the PC, the Trustee advises you as President and Director of the PC to immediately cease and desist from any and all transfers or transactions on behalf of the PC.

a. First, the Trustee's motion at issue is not a motion for turnover of the stock of the PC as indicated in the e-mail. The Trustee's motion is for the Court to "enter an order compelling the Debtor to turnover and surrender to the Trustee the contingency fee paid to the [Firm] . . ." There is no motion before the Court requesting the turnover of stock.

b. Second, the Trustee's counsel's demand forces the Debtor into a precarious ethical position. Is the Debtor really to comply with an order to cease and desist representing clients over the weekend? Such a demand ignores the rights of the firm's clients, the Debtor's right to provide labor for compensation as provided by the 13th Amendment, the rights of clients to choose their counsel, and, if Trustee Seidel is the owner of the professional corporation, constitutes a breach of Mr. Seidel's professional obligations to the clients of his firm. Has Mr. Seidel run conflicts checks against his practice and those of the firm? Has Mr. Seidel given the Debtor any information to run conflict checks against his client list? The Trustee's demand to assume control of a law practice is ethically treacherous for all lawyers involved in this proceeding. It is particularly egregious when a subpoena such as this is used as a threat (including demands to not represent clients over the weekend and demands for a nonparty to this proceeding to write a check), leaving a Debtor a choice imposed by counsel of the Trustee to either (i) breach ethics and pay, or (ii) fulfill ethics, don't pay, and bring the issues to this Court. The Debtor chose option (ii). All of these issues arises out of Trustee's counsel requesting Debtor's to consent to the continuance of the August 29th hearing. The Debtor did not consent. In response to not consenting, Trustee's counsel delivered this subpoena to The Shearer Law Group's e-mail, not the Debtor's, made two phone calls to the Debtor filled with Trustee's counsel's yelling and swearing, and demanded that the Debtor breach his ethical obligations to the firm's clients. All of the issues underlying these questions are ready to be argued on the Motion and Objection on the Court's docket for

1

August 29th, and should be decided there. The necessary response to the

2

Subpoena will be decided when the Court takes-up and decides those issues.  In

3

the meantime, the Subpoena should be quashed.

4

RESPECTFULLY SUBMITTED THIS 29th day of August, 2016.

5

SHAWN E. SHEARER

6

7

By:_____

8

Shawn E. Shearer
3001 Sale Street, #321
Dallas, Texas 75219
shawn.shearer@shearerlawgroup.com
Debtor

9

10

Copy of the foregoing e-mailed this
29th day of August, 2016 to:

11

12

Melanie Goolsby

13

Pronske Goolsby & Kathman, P.C.
901 Main Street, Suite 610

14

Dallas, Texas 75202

15

16

Shawn Shearer

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION TO QUASH SUBPOENA**

# EXHIBIT A

# SUBPOENA

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

__Northern__ District of __Texas__

In re __Shawn Eric Shearer__
<br>Debtor

*(Complete if issued in an adversary proceeding)*

Case No. __16-30427-bjh-7__

Chapter __7__

_____
Plaintiff
<br>v.
_____
Defendant

Adv. Proc. No. _____

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: __Shawn Eric Shearer__
<br>*(Name of person to whom the subpoena is directed)*

☑ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: All cash, cashier's checks, and cash equivalents of The Shearer Law Firm, PC.
<br>     Statements and/or electronic bank records of all bank accounts of The Shearer Law Firm, PC as of August 29, 2016.

| PLACE United States Bankruptcy Court, Earl Cabell Federal Building<br>1100 Commerce Street, 14th Floor, Courtroom #2, Dallas, Texas | DATE AND TIME<br>August 29, 2016 at 1:15 p.m. |
| --- | --- |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
| --- | --- |
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: __August 26, 2016__

CLERK OF COURT

OR _____
<br>Signature of Clerk or Deputy Clerk        *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
__Scott Seidel, Chapter 7 Trustee__, who issues or requests this subpoena, are:
__Melanie Goolsby, 901 Main Street, Suite 610, Dallas, Texas 75202, mgoolsby@pgkpc.com, 214-658-6512__

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____
_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i) is a party or a party's officer; or
  (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
 (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction —— which may include lost earnings and reasonable attorney's fees —— on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
 (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
 (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.
 (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  (i) disclosing a trade secret or other confidential research, development, or commercial information; or

 (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
 (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i) expressly make the claim; and
  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
 . . .
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

__Northern__            District of      __Texas__

In re __Shawn Eric Shearer__
                 Debtor

*(Complete if issued in an adversary proceeding)*

Case No. __16-30427-bjh-7__

Chapter __7__

                 Plaintiff

v.

                 Defendant

Adv. Proc. No. 

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: __Shawn Eric Shearer__

                 *(Name of person to whom the subpoena is directed)*

☑ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: All cash, cashier's checks, and cash equivalents of The Shearer Law Firm, PC.
      Statements and/or electronic bank records of all bank accounts of The Shearer Law Firm, PC as of August 29, 2016.

| PLACE United States Bankruptcy Court, Earl Cabell Federal Building 1100 Commerce Street, 14th Floor, Courtroom #2, Dallas, Texas | DATE AND TIME August 29, 2016 at 1:15 p.m. |
| --- | --- |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
| --- | --- |
|  |  |

     The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: __August 26, 2016__

        CLERK OF COURT

                            OR    *Melanie Goolsby*

      *Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Scott Seidel, Chapter 7 Trustee    , who issues or requests this subpoena, are:
Melanie Goolsby, 901 Main Street, Suite 610, Dallas, Texas 75202, mgoolsby@pgkpc.com, 214-658-6512

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

     I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
  (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction —— which may include lost earnings and reasonable attorney's fees —— on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises —— or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | ) | Case No. 16-30427-bjh7 |
| | ) | Chapter 7 |
| **SHAWN ERIC SHEARER,** | ) | |
| | ) | Courtroom 2 |
| | ) | 1100 Commerce Street |
| **Debtor.** | ) | Dallas, Texas 75242-1496 |
| | ) | |
| | ) | August 29, 2016 |
| | ) | 1:18 p.m. |

TRANSCRIPT OF MOTION TO COMPEL TURNOVER OF PROPERTY (31) AND
OBJECTION TO DEBTOR'S CLAIM OF EXEMPTIONS (32)
BEFORE HONORABLE BARBARA J. HOUSER
UNITED STATES CHIEF BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:            SHAWN ERIC SHEARER, Pro Se

For the Trustee,           Pronske Goolsby & Kathman, P.C.
Scott M. Seidel:           By:  MELANIE PEARCE GOOLSBY, ESQ.
                           901 Main Street
                           Suite 610
                           Dallas, Texas 75202

Trustee:                   Seidel Law Firm
                           By:  SCOTT M. SEIDEL, ESQ.
                           6505 W. Park Boulevard, Suite 306
                           Plano, Texas 75093

ECRO:                      Dennis Baird

**TRANSCRIPTION SERVICE:**     **TRANSCRIPTS PLUS, INC.**
                           **435 Riverview Circle**
                           **New Hope, Pennsylvania 18938**
                           **Telephone: 215-862-1115**
                           **Facsimile: 215-862-6639**
                           **e-mail CourtTranscripts@aol.com**

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

EXHIBIT

F

2

INDEX

| DEBTOR'S EXHIBITS | Marked | Received |
|---|---|---|
| 2 through 9 | 8 | 9 |
| TRUSTEE'S EXHIBITS | Marked | Received |
| 1 through 10 | 4 | 5 |

1           THE COURT:  In the Shawn Shearer case, I'll take

2   appearances.

3           MS. GOOLSBY:  Good afternoon, Your Honor.  Melanie

4   Goolsby here for the Trustee, Scott Seidel.  Mr. Seidel is also

5   here in the courtroom with me today.

6           I'll just make a quick scheduling note to the Court.

7   Mr. Seidel has a 341 meeting in another case scheduled at 3

8   p.m. this afternoon.  So he will be stepping out of the hearing

9   to take care of that, but I do not intend to call him as a

10  witness.

11          THE COURT:  Very well.  My hope is --

12          MR. SEIDEL:  If that's acceptable.

13          THE COURT:  My hope -- oh, that's fine.

14          MR. SEIDEL:  Okay.

15          THE COURT:  My hope is we'll be done before that.

16  So --

17          MS. GOOLSBY:  Me, too.

18          THE COURT:  All right.

19          MS. GOOLSBY:  Thank you.

20          MR. SHEARER:  Good afternoon, Your Honor.  Shawn

21  Shearer, the debtor in the case.

22          THE COURT:  Excellent.

23          MR. SHEARER:  And I'm appearing pro se; thank you.

24          THE COURT:  Thank you, Mr. Shearer.

25          All right.  Please, Ms. Goolsby.

4

1        MS. GOOLSBY:  Your Honor, before I begin, another

2   brief administrative note.  I did have an opportunity to

3   discuss with the debtor just prior to you walking out whether

4   the parties could stipulate to the admission of any exhibits,

5   so we might want to take care of that just quickly.

6        THE COURT:  All right.

7        MS. GOOLSBY:  As far as the trustee's exhibits are

8   concerned, the trustee has exhibits 1 through 10, the debtor

9   has stipulated to their admission.  If I may approach the

10  bench, I have copies.

11       THE COURT:  You may.  Is this two sets?

12       MS. GOOLSBY:  It's two sets, yes, Your Honor.

13       THE COURT:  Thank you.

14       MS. GOOLSBY:  One quick note:  Exhibit 1 in both

15  notebooks is -- purports to be debtor's schedules as amended.

16  And the debtor did amend those schedules a number of times.

17  Not all of those amendments are relevant to the matters that

18  we'll discuss today.  So what's included is the original

19  schedules filed at Docket Number 5, and then the amendments to

20  Schedules A and B filed at Docket Number 23.  The others relate

21  to claims and other issues that won't come up, so they're not

22  included there in the notebook.

23       THE COURT:  All right.

24       MS. GOOLSBY:  And since we do have a stipulation, I

25  would move to go ahead and admit those exhibits today.  And, of

5

1 course, I'll refer to them through witness testimony.

2        THE COURT:  Very well.  Exhibits 1 through 10 are

3 admitted.

4        MR. SHEARER:  Debtor's fine.

5        MS. GOOLSBY:  Thank you.

6        So I'd -- the trustee intends to call Mr. Shearer as

7 a witness.  But I would like to give the Court just a brief

8 preview of kind of the issues that are at play here.  The

9 trustee has filed two separate pleadings:  A motion for

10 turnover and an objection to exemptions.

11        The exemption objection is not really a primary

12 issue.  And depending on how the turnover motion issues are

13 resolved, that objection likely can be withdrawn.

14        But the turnover motion does present some issues.

15 The -- the debtor is an attorney.  He's an individual Chapter 7

16 debtor who owns a 100 percent equity interest in a law firm,

17 the Shearer Law Group, PC.  And the fight is essentially over

18 that particular equity interest and how it should be monetized

19 and what's property of the estate, and what is not.

20        The trustee's position is that that equity interest

21 is unquestionably property of the estate.  And, in fact, the

22 debtor's schedules in his own pleadings admit this.

23        The dispute really arises in a conflation of value

24 and proceeds when it comes to this equity interest.  The

25 trustee's position is that the value of that equity interest

1  perhaps was nominal, maybe zero on the petition date. But

2  because of events that occurred post petition, that value has

3  now increased. And the trustee is entitled either to the

4  turnover of that equity interest, including its indicia of

5  stock certificates and governing documents, and financial

6  documents and books and records.

7          Or, alternatively, the trustee believes that the

8  turnover statute supports an alternative argument that the

9  debtor may turn over the value of that equity. And the

10 trustee's position and the evidence will show that that value

11 is essentially easily monetized in this case. The law firm has

12 nominal assets and nominal liabilities as far as current assets

13 and liabilities are concerned. It generates enough fees to

14 cover its ongoing current liabilities.

15         The distinction, however, is that on the petition

16 date, there was a contingency fee arrangement that later was

17 earned post petition. And the net of that fee, approximately

18 $65,000, is an easy way to monetize this equity interest. So

19 the trustee is either asking for the things that it needs from

20 the debtor in order to monetize that interest. Or,

21 alternatively, for the Court to order the debtor to turn over

22 the $65,000 fee which is an approximation of the value of that

23 equity interest.

24         Now the debtor raises a defense under Section

25 541(a)(6), essentially to say that the fee, this dollar amount,

1 is profits or proceeds of property of the estate.  That subject

2 to a carve-out exception for earnings of the debtor post

3 petition for -- for the debtor's post petition services.  And

4 we'll bring this up in legal argument and closing, but I

5 believe that the case law shows that the contingency fee was

6 earned by the firm, not the debtor, so that the (a)(6)

7 classification of property -- or whether of  proceeds and

8 profits doesn't even come into play.  And that the earnings

9 exception of (a)(6) is limited to that particular provision in

10 Section 541.

11        So essentially we're looking back to Section

12 541(a)(1), and this is just a legal interest of the estate that

13 the trustee's entitled to turnover of, but we'll take that up

14 with evidence in closing.

15        THE COURT:  All right.

16        MR. SHEARER:  Good afternoon, Your Honor.

17        THE COURT:  Good afternoon.

18        MR. SHEARER:  In terms of preliminary matters and

19 exhibits, I believe that we've all consented and agreed that

20 Debtor's Exhibits SS-2 to SS -- this one fell apart -- 9 are

21 admitted.  SS -- Exhibit 1 is a -- a --

22        THE COURT:  Do you have a copy for me, please?

23        MR. SHEARER:  Yeah, I will; I'll give you some.  Is

24 it --

25        THE COURT:  If you could give me that now so that I

8

1  can be looking at them --

2          MR. SHEARER:  Okay.

3          THE COURT:  -- while you're --

4          MR. SHEARER:  Yeah.

5          THE COURT:  -- going through that, please.

6          MR. SHEARER:  Yup, this one fell apart, so --

7          THE COURT:  No problem.

8          MR. SHEARER:  -- let me put it back together.

9          THE COURT:  Thank you.

10                      (Pause)

11          THE COURT:  You may; thank you.  Thank you so much.

12  Thank you.  All right.

13          MR. SHEARER:  Exhibits SS-1 is an affidavit of the

14  Shearer Law Group.  Since I am here today, and Ms. Goolsby has

15  said that I can testify as to what's in there, there's no need

16  to admit that, and that is fine with me.

17          The remainder of the exhibits, I believe, are self-

18  authenticating -- well, all but one are self-authenticating as

19  Government documents or documents that Ms. Goolsby has already

20  admitted.

21          And so I would move that the remainder of the

22  exhibits be admitted.  And I don't believe there's an objection

23  to anything, other than SS-1.

24          MS. GOOLSBY:  I --

25          THE COURT:  So SS-2 through 9, any objection?

9

1          MS. GOOLSBY:  No objection.

2          THE COURT:  SS-2 through 9 are admitted.

3          MR. SHEARER:  Great.

4          Fundamentally this case comes down to the

5 interpretation of 541(a)(6).  At the time that I personally

6 filed bankruptcy, the client that I was representing in Arizona

7 had -- we had won a summary judgment minute entry, and we were

8 going to hearing for final judgment.  At 11:57 p.m. the night

9 before the hearing, the defendant in that case filed for a

10 Chapter 11, and things got prolonged.

11         And the firm just didn't have the cash flow from

12 other sources.  And so I was forced to file because I wasn't

13 going to make rent and child support.  And so that's why I

14 filed.

15         Subsequent events after that involved me representing

16 them -- the defendant -- the -- my client in Arizona on -- in -

17 - in the Chapter 11 proceeding down in Arizona.  Out of the

18 blue, for some reason and I still don't understand, a global

19 settlement was proposed which involved paying my client 80

20 percent of what we had before.

21         And the end result was that then the firm earned its

22 fee.

23         But for 541(a)(6), I think it's important to look at

24 -- and I think the case law will support -- that you look at

25 where was the firm on February 1st.  And on February 1st, the

10

1 firm had a client with a contested claim in a Chapter 11 case.

2 And we were -- and with cash collateral issues that if we were

3 claiming a right in cash collateral, objecting to first day

4 motions, my view of it was it was a toss up as to how that

5 decision was going to go. And so -- I didn't view that this

6 case is worth anything. And so that's why I filed, to keep the

7 house -- well, to keep the duplex and make sure that I made my

8 child support payment the next month.

9          And everything after that was my labor. And I think

10 under 541(a)(6) and the policies behind it, that the debtor in

11 a 7, as opposed to 11, 12, or 13, is entitled to their fruits

12 of -- fruits of their labor post petition. And -- and

13 everything that the law firm earned was solely due to my work

14 post petition.

15          Had I ceased work, the firm would have had a $4,500

16 payable, payable over the next nine months at $500. And so --

17 and the way the engagement letter was written, that's all that

18 the firm had. Everything that came after that is due to my

19 work for the firm after the petition. So I think that falls

20 under the 541(a)(6) exemption.

21          And I think we can move on to putting on evidence.

22          THE COURT: Very well; thank you.

23          Let me just ask a couple of questions, and maybe that

24 will help focus this just a little bit. I'm not convinced, Ms.

25 Goolsby, that procedurally this can be decided in a turnover

1 action.

2          MS. GOOLSBY:  Um-hum.

3          THE COURT:  Nobody but me is raising that, but

4 turnover is designed for property that is -- well, part of it

5 may be able to be handled through a turnover.

6          But turnover is not designed to turn over things that

7 are contested.  And clearly it's designed to be a streamline

8 device where, for example, usually it's account receivables, or

9 something where there's no dispute, and the trustee needs a

10 quick and easy way to get title to that property or to get the

11 actual property transferred to him.

12          MS. GOOLSBY:  Um-hum.

13          THE COURT:  That's not this.  I mean perhaps it's

14 this as it relates to the stock certificates, but what you --

15 you -- you know -- I'm inferring a bit between the lines and

16 based on what you said today.  But you don't much care about

17 the stock certificate, what you really want is the contingency

18 fee, and that's disputed.

19          And that's not the debtor's personally.  That is

20 property of the law firm, right?  Law firm has presumably its

21 own creditors.  That's not Mr. Shearer's personal property.

22          How are we possibly using turnover under 542 to deal

23 with this?

24          MS. GOOLSBY:  I understand the Court's concern.  And

25 this is something that the lawyers in my firm have been

1 internally discussing as these issues have been percolating.

2       The trustee's position can be spelled out in this

3 case: Of course Your Honor knows under Bankruptcy Rule 7001

4 that turnover relief can be sought against a debtor by motion.

5 An adversary proceeding is not required.

6       THE COURT: Right.

7       MS. GOOLSBY: And --

8       THE COURT: If turnover relief is the proper remedy.

9       MS. GOOLSBY: If it's the proper remedy, of course.

10 And the first step in the analysis for the trustee looks to

11 Section 541(a)(1). And it's not disputed by the debtor or the

12 trustee that the stock and the equity interest in the firm is

13 property of the estate. The debtor has not alleged any basis

14 for exempting that asset.

15       So that's unquestionably settled in this case under

16 (a)(1), that the stock itself is property of the estate, and

17 that's not disputed.

18       THE COURT: I understand. So -- but that's not

19 really the issue. That's why I said perhaps turnover could be

20 used for the stock certificates.

21       MS. GOOLSBY: Yeah, Your Honor.

22       THE COURT: But --

23       MS. GOOLSBY: Your --

24       THE COURT: But that's not really what you want.

25       MS. GOOLSBY: Yes; and pardon the interruption.

1 You're absolutely correct.  That's not what the trustee wants.

2 The trustee wants the value that that stock represents.

3        And the turnover statute in many ways presents an

4 election of remedies.  It says that the trustee, or whomever is

5 entitled to turnover, can either receive turnover of the

6 property or the value of the property.

7        THE COURT:  Nope.  We're not using turnover for -- if

8 -- if you want a declaratory judgment action, which is really

9 what you're asking for, that is not a turnover action.  And

10 you --

11        MS. GOOLSBY:  Well, the trustee --

12        THE COURT:  You cite me nothing that suggests that

13 this can be done by turnover.  And I'm happy -- if you have

14 something that says that you can do this by a turnover action,

15 I'd be delighted to see it.

16        MS. GOOLSBY:  Um-hum.

17        THE COURT:  But I just don't think turnover is the

18 appropriate remedy here.

19        MS. GOOLSBY:  Um-hum.  And I understand, Your Honor.

20 I -- I do not have any authority to present the Court today in

21 the courtroom on this particular application of turnover.

22        If you wish, we can -- we can do some briefing after

23 the hearing if you'd like to see that.  But --

24        THE COURT:  There's no point in having a hearing

25 unless this is the procedurally correct vehicle.  And I guess

14

1  I'm a little surprised -- maybe I misheard you just a minute

2  ago, but I thought I heard you say essentially that you weren't

3  terribly surprised by my inquiry, you've been debating this

4  around the law firm.

5          MS. GOOLSBY:  Yeah -- yes, Your --

6          THE COURT:  If that's true, then why would you not

7  come to the hearing with authority that would support the

8  procedural mechanism that you elected to pursue this matter on

9  behalf of Mr. Seidel?

10         MS. GOOLSBY:  Well, Your Honor, our authority is just

11 the text of the statute.  And we believe that we can --

12         THE COURT:  But where is --

13         MS. GOOLSBY:  -- put on evidence --

14         THE COURT:  Where is the text of the statute that

15 says you can do this by turnover?

16         MS. GOOLSBY:  Well, what I'm referring to is Section

17 542(a)(1) that allows for the trustee to -- or -- or I'll just

18 -- I'll read the code section and highlight what I'm referring

19 to:

20         "Except as providing in subsection (c) or (d) of this

21     section, an entity, other than a custodian, in possession,

22     custody, or control, during the case, of property that the

23     trustee may use, sell, or lease under Section 363 of this

24     Title" --

25         And our position is that the equity in the firm and

15

1 the indicia of that, including the -- the means to exercise

2 legal rights that come with that, including governing documents

3 and such. We believe that that is property of the estate.

4 And -- so that the debtor is in possession, custody,

5 or control of property that the trustee may use, sell, or lease

6 under Section 363, or that the debtor may exempt under Section

7 522, which I don't believe is relevant.

8 -- "shall deliver to the trustee, and account for,

9 such property or the value of such property, unless such

10 property is of inconsequential value or benefit to the

11 estate."

12 That's not the case. We believe this is

13 consequential.

14 So I'm looking to this clause here that says:

15 "Shall deliver to the trustee, and account for, such

16 property or the value of the property."

17 So the trustee is asking for one of two things:

18 One, the trustee wants to exercise control over the

19 equity and all the legal rights that come with being 100

20 percent shareholder in a professional corporation --

21 THE COURT: And can he do that legally? Have you

22 briefed that at all? This is a -- this is a law firm. Have

23 you briefed that? Because you've certainly not briefed it to

24 the Court, as to whether or not Mr. Seidel can. I mean there

25 are -- there are rules relating to who can own stock in a

16

1  professional corporation.  Have you researched that?

2          MS. GOOLSBY:  I have.

3          THE COURT:  Is this --

4          MS. GOOLSBY:  And I have brought provisions of the

5  Texas Business Organization's Code that established that Mr.

6  Seidel may be an authorized person.  He's an attorney licensed

7  to practice law.  He is an authorized person to hold equity in

8  a professional corporation for the purposes of practicing law.

9          THE COURT:  Yeah, but -- but -- I figured that's what

10 you were going to say.  But, you know, he is also, in this

11 case, not going to practice the law that this firm practices.

12 He is a Chapter 7 trustee.  It's just luck of the draw,

13 frankly, that one of our panel trustees who happens to be a

14 lawyer was appointed trustee in Mr. Shearer's case.

15         Did you find any cases interpreting this?  I mean we

16 looked, and we could not find any.

17         MS. GOOLSBY:  I --

18         THE COURT:  Again, this wasn't really briefed, but

19 that issue obviously jumps out at you given the structure and

20 strictures of who can -- who can own a professional legal

21 corporation.

22         So did you find any case law that says a Chapter 7

23 trustee who happens to be a lawyer can succeed to a lawyer's

24 interest in his own firm?

25         MS. GOOLSBY:  I have not found any case law.  I did

1 | bring the statutes in, which I'm sure the Court is familiar

2 | with those, as well.

3 |     But they do speak in terms of operating and holding

4 | the stock. And, you know, obviously it goes without mention

5 | that Mr. Seidel does not intend to come in and to operate the

6 | business of the firm. He's not intending to step into the

7 | shoes of Mr. Shearer.

8 |     THE COURT: Okay.

9 |     MS. GOOLSBY: And --

10 |     THE COURT: But if he takes the spot, he's obligated

11 | to, right? I mean this is kind of "be careful what you ask

12 | for" situations maybe. Because if I direct the turnover of the

13 | stock, then he's the proud owner of Mr. Shearer's former law

14 | firm.

15 |     MS. GOOLSBY: Um-hum, yes, Your Honor.

16 |     THE COURT: And he -- he would have to operate that,

17 | right?

18 |     MS. GOOLSBY: Well, the trustee would take over the

19 | stock, and use the appropriate rights and remedies under Texas

20 | law in order to liquidate it and wind it down --

21 |     THE COURT: And what's --

22 |     MS. GOOLSBY: -- and to monetize it.

23 |     THE COURT: Right. Right. That's right. Are there

24 | other employees at the corporation?

25 |     MS. GOOLSBY: The evidence will show that there --

1 there is one administrative employee.

2        THE COURT: So Mr. Shearer is the solo practitioner

3 through this firm.

4        MS. GOOLSBY: Yes.

5        THE COURT: And he has one staff person.

6        MS. GOOLSBY: One staff person. There are not very

7 many assets involved here, a couple of thousand dollars worth

8 of receivables. There is no lease --

9        THE COURT: Plus the contingency fee.

10        MS. GOOLSBY: Other than the contingency fee, yes.

11 If I can just kind of walk through that.

12        My understanding from Mr. Shearer is that there are a

13 couple of thousand dollars worth of receivables, you know,

14 supplies, papers, computer, desk equipment, such as that, you

15 know, that probably doesn't have much value to the trustee.

16 He's not too concerned about that obviously.

17        As far as the liabilities are concerned, I believe

18 there might be some salary or wage liabilities that are

19 current. And the impression I've received from the debtor is

20 that those liabilities are current, meaning there's not a --

21 you know, a significant accrual of other liabilities to be

22 wound down.

23        THE COURT: But --

24        MS. GOOLSBY: So it --

25        THE COURT: But what about just trade vendors of

1 the --

2          MS. GOOLSBY:  Exactly.  My impression is that that's

3 not significant in this case.

4          THE COURT:  Okay.  But -- but what does that mean?

5 Five thousand?  Ten thousand?  Twenty thousand?  Two thousand?

6          MS. GOOLSBY:  We'd have to ask Mr. Shearer.

7          THE COURT:  Okay.  So you've not done any discovery

8 on that?

9          MS. GOOLSBY:  I deposed him, and the testimony, of

10 course paraphrasing, was essentially that the current assets

11 and current liabilities set each other off, and really the

12 value here is this fee.

13          THE COURT:  Okay.  Well, I am -- I am terribly

14 concerned that this is not a proper use of 542.  This feels

15 like an adversary proceeding.  So unless the parties are

16 prepared to agree to litigate this without an adversary

17 proceeding, I'm not -- without briefing and authority that

18 construes the three or four words in the statute the way that

19 you are construing it, in the face of significant case law that

20 says you don't use turnover when there is a dispute.  It feels

21 like you're trying to use a shortcut to get to an outcome that

22 542 wasn't really designed to address.  So -- thoughts?

23 Because, again, if you don't have any case law that has

24 interpreted the three or four words in 542(a) in a fashion

25 consistent with what you're trying to do, and unless the

1 | parties have agreed to deal with this by motion as opposed to

2 | an adversary proceeding with all of the procedural formalities

3 | that that provides, then I think we have a hitch in our get

4 | along.

5 |         MS. GOOLSBY:  I -- the -- the only real thoughts I

6 | have in response to that, if that's the Court's wish for the

7 | parties, then, you know, the trustee is certainly happy to

8 | accommodate that.

9 |         But, of course, what that essentially means is, you

10 | know, a significant expense to the estate, and significant

11 | expense to Mr. Shearer.  And, you know, of course procedures

12 | are procedures, and --

13 |         THE COURT:  I mean --

14 |         MS. GOOLSBY:  -- we want to be respectful of that.

15 | But --

16 |         THE COURT:  I said if the parties agreed, I would do

17 | it by motion.  But have you even spoken?

18 |         MS. GOOLSBY:  I have not spoken with Mr. Shearer

19 | about this.

20 |         THE COURT:  And I take it -- you know, 542 has been

21 | around for a long time.  And if there is not a single case out

22 | there that interprets -- or the value of such property in a way

23 | where you can basically take a disputed issue and litigate it

24 | in the context of 542, then it's not what the Court wishes,

25 | it's that there's just really no authority to support your

1  proposition.  I mean, you know, do any of the treatises support

2  your interpretation or use of 542?  Do you have anything that

3  supports it other than the way you read those three or four

4  words?

5       MS. GOOLSBY:  No, Your Honor.  I mean I've come in

6  with the language of the code, and was prepared to argue on

7  that, and I understand what Your Honor is saying.

8       Of course, the trustee -- if the -- the debtor

9  consents so, you know, we'll have to ask Mr. Shearer -- is

10  prepared to move forward, and the trustee is prepared to put on

11  evidence to establish the value of this property to resolve the

12  dispute.

13       But, again, obviously we can't -- we can't force a

14  remedy where there is none, and where there's no consent.  So

15  the trustee's prepared to move forward however the Court and

16  Mr. Shearer wishes.

17       THE COURT:  Well, you keep using that phrase, and I'm

18  going to reject it.  It's not how I wish, it's what the code

19  requires, as I interpret the code.  So I'm not simply imposing

20  my wish, I am imposing my understanding of what the law is.

21       MS. GOOLSBY:  I didn't intend to suggest otherwise,

22  but thank you.

23       THE COURT:  Well, you do keep using that word "we're

24  happy to do whatever the Court wishes."  And it's really not my

25  wish, it's what I think the mandates of procedural due process

1 require.

2          Mr. Shearer, you're a lawyer, obviously. And -- so

3 the issue is procedural due process. I am not convinced 542

4 can be used in the way in which the trustee's trying to use it.

5 But Ms. Goolsby is correct, all that's going to happen is if we

6 don't proceed today by consent is that Mr. Seidel will file an

7 adversary proceeding seeking the same relief, just written

8 differently.

9          But, of course, I don't want to minimize that because

10 that then gives you some procedural protections: You get to

11 file an answer, you get to do other things. It will increase

12 his cost and your cost to deal with this through an adversary

13 proceeding.

14          So -- but I -- I did want to alert Ms. Goolsby and

15 you to the procedural issue because, from my perspective,

16 there's no point in proceeding here today only to have this

17 procedural issue raised later. And then to have the time we

18 spend here today be rendered for naught potentially.

19          So are you prepared to proceed by motion?

20          MR. SHEARER: I --

21          THE COURT: Do you need further information to --

22          MR. SHEARER: No, no, no. I -- I actually have a

23 motion to vacate sitting over there based on exactly this

24 issue. I also filed a motion to quash today on a subpoena.

25 But on Page 2 of that, there's a list of cases, all addressing

1 this exact issue on the -- that the firm hasn't been properly

2 joined in this case.

3        The question that I have on trying to decide whether

4 to proceed on motion or not is that the motion before the Court

5 is only a motion for the turnover of the cash in possession of

6 the Shearer Law Group.  There is no motion for the turnover of

7 the stock.  That's new, and that came to me on Friday

8 afternoon.

9        So while spending my weekend putting together

10 financial documents and such, I did a little bit of research on

11 is -- is the trustee really the owner of the assets, or is the

12 estate the owner of the assets.  And that would be very

13 important in interpreting the Texas Business Code.

14        There was a case --

15        THE COURT:  Well, the trustee -- I mean the trustee

16 is a --

17        MR. SHEARER:  Is a --

18        THE COURT:  -- representative of the estate.

19        MR. SHEARER:  The trustee is a representative of the

20 estate -- of the estate.

21        THE COURT:  Right, title transfers to the trustee but

22 in a representative capacity, right?

23        MR. SHEARER:  That is correct.  But a law -- my law

24 license is not transferable to the estate, and that's --

25 there's some Texas case law here on that.  It's <u>Wheeler v.</u>

1 | <u>Milbank</u> --

2 | THE COURT: No, no, I understand.

3 | MR. SHEARER: And --

4 | THE COURT: But let's stay focused --

5 | MR. SHEARER: But the question is does --

6 | THE COURT: -- on the question of --

7 | MR. SHEARER: Right. And the question is that <u>T.P.</u>

8 | <u>Long Chemical</u>, this is a CERCLA case, big old barge full of

9 | toxic drums that -- and what they said is under the Bankruptcy

10 | Act, the trustee did acquire title, but that's no longer the

11 | case under the current Bankruptcy Code Section 541(a). It

12 | says that:

13 | "The debtor's ownership interest in these drums,

14 | i.e., the debtor's title to the drums, because an interest

15 | includable in property of the estate. Thus, it is the

16 | estate itself, and not the trustee, which is the owner of

17 | these toxic drums."

18 | So the estate owns the stock. Mr. Seidel's law

19 | license is not transferrable, my law license is not

20 | transferrable. The estate doesn't have a law license to

21 | practice law.

22 | THE COURT: Yeah, but --

23 | MR. SHEARER: So the estate -- this is the estate --

24 | THE COURT: But you're still not answering my

25 | question.

1          MR. SHEARER: I'm sorry.

2          THE COURT: You're getting to the merits, and I'm --

3 I'm on a preliminary issue of "can we proceed forward today by

4 agreement," or are we going to require that an adversary get

5 filed --

6          MR. SHEARER: Right.

7          THE COURT: -- and this litigate --

8          MR. SHEARER: And I have --

9          THE COURT: -- litigated through an adversary.

10          MR. SHEARER: What I'm asking for clarification is I

11 only have a motion for turnover of property. I -- there's no

12 motion for turnover of the stock.

13          THE COURT: Well, that's --

14          MR. SHEARER: And so I don't understand what --

15          THE COURT: That's not quite true.

16          MR. SHEARER: -- we're going to proceed on a motion,

17 on which one of these are we --

18          THE COURT: That's not quite true; they asked for

19 both. But it's in -- I'll be honest, it's an inartful -- the

20 prayer says that they want the value turned over, but the body

21 says that the stock is to be turned over. So I understand your

22 confusion, but if you read the entirety of the document, I read

23 it that they were seeking a turnover of the stock, and then

24 this contingency fee itself.

25          But I will also agree that if you look only at the

1 prayer, it says that they ask for an order compelling the

2 debtor to turnover and surrender the contingency fee paid.

3          MR. SHEARER: And the question of me is whether I

4 want to proceed forward at this point in time based on motion

5 on both the turnover of the cash and the turnover of the stock,

6 whichever they would choose. Um --

7          THE COURT: Yes, sir.

8          MR. SHEARER: I personally think we ought to do this

9 right and, you know, I had a motion to vacate with me based on

10 their failure to initiate an adversary proceeding. And if this

11 went down on the motion, I was going to raise that issue that

12 you raised right off the start. So I think we ought to do it

13 right, that way everybody's -- that everything is taken care

14 of.

15          THE COURT: Fine. Fair enough. All right. Then,

16 Ms. Goolsby, I fear that the Court has to deny this motion

17 without prejudice. And you can proceed to refile whatever you

18 choose to as an adversary proceeding, and we'll proceed on that

19 basis.

20          MS. GOOLSBY: Yes, Your Honor, agreed; we'll do that.

21          I would like to -- just one final issue in the

22 record.

23          THE COURT: Of course, please.

24          MS. GOOLSBY: At the 341 meeting, I believe -- Scott,

25 correct me if I'm wrong -- the fee was discussed, and the

1 parties reached an agreement on the record at that, and then

2 later confirmed in an e-mail that that fee was to be held

3 maintaining status quo. It wasn't to be dissipated, it was

4 going to be preserved there pending resolution of the issue.

5 So for the record, I would reflect that that agreement still is

6 in play, it still applies because the issue has not been

7 resolved. It will just be pending resolution of an adversary

8 proceeding.

9           THE COURT: I don't know what you want me to do with

10 that.

11           MS. GOOLSBY: Well --

12           THE COURT: If you reached agreement, fine.

13           MS. GOOLSBY: Um-hum. Well, perhaps I can ask Mr.

14 Shearer on the record if he'll continue to verify that

15 agreement.

16           THE COURT: Mr. Shearer?

17           MR. SHEARER: Your Honor, I -- that is correct. I

18 initially agreed to that, that I would preserve that fee.

19           The issue really kind of comes down to this fee and

20 its potential was initially discussed in March. It was

21 discussed in May. It was discussed in June. It was discussed

22 in July. It's been the subject of this motion. I mean at some

23 point, the corporation needs to operate. It's got -- for

24 example -- I've got it with me -- I need to respond to the TLIE

25 by tomorrow on my renewal of the malpractice insurance policy.

1  I need to pay my monthly Lexis bills.  I need to, you know, pay

2  for toner and paper.  And -- and constantly having this $65,000

3  just sitting off on the side is creating a real strap.  It's --

4  there -- it's causing me the same problems that I had before

5  this whole process which is, you know, there's money there that

6  I'm not using.

7          So I originally agreed for that -- the corporation to

8  maintain those funds, but at some point, you know, they need --

9  they need -- you know, they should file their adversary action

10  or -- and so, you know --

11          THE COURT:  It's simpler than this.  Are you still

12  agreeable to the money being held, or are they going to need to

13  seek to file a temporary restraining order?  Because we can go

14  back through a fire drill on that, but I think Ms. Goolsby's

15  question is just will you continue to honor that agreement

16  because the trustee needs to know.  If you're not inclined to,

17  then --

18          MR. SHEARER:  Well --

19          THE COURT:  -- there are remedies that they

20  presumably will attempt to pursue.

21          MR. SHEARER:  No, I -- I can continue to comply with

22  that.  But I just need to advise them that at some point, I may

23  need to seek an order that allows me to -- my firm to use those

24  funds.  Because the position, you know, is that those funds are

25  not property of the estate, and that they are the proceeds of

1  my post petition labor.  And the trustee really doesn't have a

2  right to tell me what to do with them.

3         So -- I mean I can -- I can handle that for, you

4  know, a period of time, but, you know, the fresh start is

5  becoming a stale start.  It's -- it's -- this is taking too

6  long for me to keep sitting on this, and try to support the

7  practice.  And -- so, you know, if they can get it filed, and

8  we can do this the right way quickly, you know, I can do that

9  for, you know, another month or so.  But at some point, I'm

10 going to need to press the issue.

11         THE COURT:  So why don't you all talk about that and

12 get clarification?  And, you know, whether the mechanics are he

13 gives you notice that he's not willing any longer or -- but

14 there needs to be some mechanism so that no one is prejudiced.

15 Either Mr. Shearer can come and ask me for authority to use

16 money, or the trustee can come and try and restrain him from

17 using after whatever this defined period is that you're

18 prepared to continue along preserving the status quo.

19         MS. GOOLSBY:  Your Honor, thank you, and I agree with

20 that.  The trustee is perfectly fine to proceed.  However Mr.

21 Shearer agrees to, we just want to be sure to get notice before

22 those funds are used.

23         MR. SHEARER:  Okay.

24         THE COURT:  All right.  Thank you very much.

25         MS. GOOLSBY:  Thank you.

30

1          THE COURT:  Thank you.  You all are excused.  I'm

2 going to be out here for a few minutes, but thank you very

3 much.

4          MR. SHEARER:  Thank you.  Thank you, Your Honor.

5             (Recess 1:57 p.m./Reconvene 2:01 p.m.)

6          THE COURT:   Did you catch her?

7          MR. SHEARER:  No, Your Honor, I think she's -- I

8 think she has left the building.

9          THE COURT:  Okay.  Let me just tell you so that

10 you're not surprised, and then my Courtroom Deputy will reach

11 out to her.  The objections -- there were two things set today:

12          There was the motion to compel turnover, that will be

13 denied without prejudice;

14          And then there was the trustee's objection to your

15 exemptions.  And I don't want to deny that because the time to

16 object may have run.

17          So I'm going to suggest that we just carry that to be

18 presumably tried with the adversary proceeding, heard

19 concurrently, if you will.

20          MR. SHEARER:  No, I think that's fine because --

21          THE COURT:  And that way --

22          MR. SHEARER:  -- depending on how the adversary

23 proceeding --

24          THE COURT:  Goes --

25          MR. SHEARER:  -- is decided, then that becomes --

31

1        THE COURT:  It's going to moot one way or the other.

2 So --

3        MR. SHEARER:  Right.

4        THE COURT:  All right.  Excellent.

5        MR. SHEARER:  All right, Your Honor.

6        THE COURT:  We'll let her know.

7        MR. SHEARER:  Thank you.

8     (Whereupon, at 2:02 p.m., the hearing was adjourned.)

9

10

11                CERTIFICATE OF TRANSCRIBER

12

13     I, KAREN HARTMANN, a certified Electronic Court

14 Transcriber, certify that the foregoing is a correct transcript

15 from the electronic sound recording of the proceedings in the

16 above-entitled matter.

17

18     *Karen Hartmann*

19

20 Karen Hartmann, AAERT CET**D0475 Date:  September 7, 2016

21 TRANSCRIPTS PLUS, INC.

22

23

24

25

**Thursday, September 8, 2016 at 11:37:22 AM Central Daylight Time**

**Subject:** Meeting Today

**Date:** Tuesday, August 30, 2016 at 3:22:41 PM Central Daylight Time

**From:** shawn.shearer@shearerlawgroup.com

**To:** M Goolsby

Melanie - I am still in my 2pm meeting.  I am not going to make it downtown and I have to pick up my kids at 5:30. Let me know another time that will work.  I really think it's important for Scott to be there.

Get Outlook for Android

EXHIBIT

G

Page 1 of 1

**Subject:** Re: Meeting Today

**Date:** Tuesday, August 30, 2016 at 4:00:14 PM Central Daylight Time

**From:** M Goolsby

**To:** shawn.shearer@shearerlawgroup.com

**CC:** G Pronske, Scott Seidel

I'm disappointed that we won't be able to meet today since time is of the essence in this situation. The next availability I have to meet is next Tuesday. Scott will not be available for a meeting until the week of September 12, but do not misunderstand that to mean that the Trustee does not intend to move forward with the lawsuit and TRO until the week of September 12. I prefer to work out an agreement with you before filing, since Judge Houser said that is what she would like to see, but the Trustee must move quickly to preserve the estate's interest and does not see an agreement providing for the operations of the firm as a prerequisite to filing the lawsuit and obtaining a TRO. Furthermore, as I discussed on the record yesterday, the administrative cost of filing a lawsuit and going through the fire drill to get a TRO will have a meaningful impact on the terms of any agreed temporary injunction and/or potential resolution of the dispute.

Finally, I had requested that you bring in proof this afternoon showing a bank balance of at least $65,000 in a firm account, something I've requested multiple times. I am uncomfortable that our cancelled meeting means another delay in receiving proof of funds. Please send over proof showing that the $65,000 is deposited in a firm account, with copy to Scott.

Thank you.

**Melanie P. Goolsby**

---

**From:** "shawn.shearer@shearerlawgroup.com" <shawn.shearer@shearerlawgroup.com>
**Date:** Tuesday, August 30, 2016 at 3:22 PM
**To:** Melanie Goolsby <mgoolsby@pgkpc.com>
**Subject:** Meeting Today

Melanie - I am still in my 2pm meeting. I am not going to make it downtown and I have to pick up my kids at 5:30. Let me know another time that will work. I really think it's important for Scott to be there.

Get Outlook for Android



EXHIBIT

H

Page 1 of 1

**Subject:** Account information
**Date:** Tuesday, August 30, 2016 at 4:22:37 PM Central Daylight Time
**From:** G Pronske
**To:** Shawn Shearer
**CC:** Scott Seidel, M Goolsby

Shawn,

You have indicated on numerous occasions that you have proof that $65,000 is on bank deposit as of this past weekend. You have emailed Melanie a number of documents, but have not emailed proof of the bank deposit. You told me on the telephone on Friday, August 26, 2016, that as of that Friday call (which took place at approximately 4:00 p.m.) you had never deposited any of the $65,000, but instead held the funds in a combination of uncashed "cashier's checks" and actual cash. I asked you how much of the funds were in cash and you could not tell me how much was in cash. After that call, you informed us by email that $65,000 would be in the bank account within 24 hours. You say that you have done this, but you have not given us the proof that we need in the form of bank statements/deposit slips.

You said that you were going to bring proof of the funds being in the bank account today at 4:00, and then cancelled the meeting. I am concerned to the point of being alarmed that the funds are not in the bank account. I need for you to immediately send us proof by email of the existence of the $65,000 deposit in the bank account, and your written representation by email that a minimum of $65,000 will remain in the bank account until further Order of the Court. This should be a very simple task. I will assume that if you cannot send proof of the funds in the bank, that they are not in the bank account.

Gerrit M. Pronske*
PRONSKE, GOOLSBY & KATHMAN, P.C.
901 Main Street
Suite 610
Dallas, TX 75202
**\* Licensed in the States of Texas, Colorado and New Mexico**

☎ Direct Dial: **214.658.6501**
☎ Cell Phone: **214.762.1100**
🖹 Fax: **214.291.2665**
📭 E-mail: **gpronske@pgkpc.com**

**Please click here to download vCard.**

This electronic message contains information from the law firm of Pronske & Patel, P.C., that may be privileged and confidential. The information is intended for the use of the addressee(s) only. If you are not a ... disclosure, copying, distribution, or use of the contents of this message is prohibited. If you h... ... error,

EXHIBIT

I

please contact me at the number or e-mail listed above.