**FILED**

OCT 0 4 2016

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

Shawn Eric Shearer
3001 Sale Street, #321
Dallas, Texas 75219
Tele: (214) 434-1594
shearershawn@hotmail.com
Defendant

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| SHAWN ERIC SHEARER, | No. 16-30427-bjh-7 |
| Debtor. | **Adversary No. 16-03128** |
| SCOTT SEIDEL, Chapter 7 Trustee | |
| Plaintiff | ANSWER<br>BY DEFENDANT SHAWN ERIC SHEARER |
| v. | |
| THE SHEARER LAW GROUP, P.C. and SHAWN ERIC SHEARER | |
| Defendants. | |

Defendant Shawn Eric Shearer ("Defendant" or "Debtor") this Answer to Plaintiff's Complaint (the Complaint") in the above title adversary proceeding initiated in the Chapter 7 proceedings of Debtor.  Unless otherwise defined, capitalized terms used herein have the meaning assigned in the Complaint. Paragraph numbers set forth below correspond to the paragraphs of the Complaint. Defendant answers the Complaint as follows:

## I.    JURISDICTION AND VENUE

1. Admit.
2. Admit.

## II. PARTIES

3. Admit.

4. Admit Defendant The Shearer Law Group, P.C. (the "Firm") is a Texas professional corporation organized under the laws of the State of Texas for the purpose of the practice of law, and admit service of process information.

5. Admit.

## III. FACTUAL BACKGROUND

**A. Arizona Litigation**

6. Admit.

7. Admit the first two sentences of ¶7. Deny that because the Debtor is the sole shareholder of the Firm as of the Petition Date, the Debtor has exclusive authority over the assets of the Firm. Affirmatively assert that (i) the assets of the Firm are under the control of the officers of the Firm, subject to Board oversight (Tex. Bus. Org. Code §21.401), and as provided in the Firm's governing documents and the Texas Business Organizations Code, and (ii) shareholders may not act on behalf of the corporation *Solum Eng.. Inc. v. Preis & Roy. PLC*, 2011 Tex.App. LEXIS 7798 (Tex. App. – Houston 2011). Admit that the Firm has refused to turn over the Firm's assets to the Trustee. Deny that the Firm's assets became property of the estate by the filing of the Bankruptcy Petition, pursuant to section 541(c)(1) of the Bankruptcy Code. Deny the remainder of ¶7.

8. Admit the Firm entered into an Engagement Letter and Fee Arrangement (the "Engagement Agreement") on or about November 7, 2014 whereby the Firm agreed to represent Steve Peitler, JM Living Trust, and Jennifer Peitler. Deny that the Firm agreed to represent Steve Peitler and Jennifer Peitler in a litigation matter. Affirmatively assert that the only client of the Firm in the litigation matter was JM Living Trust (the "Client"). For purposes of responding to the remainder of the Complaint, Debtor denies all references to "Clients" as including Steve and Jennifer Peitler, and the Debtor's answers below are based on reading "Clients" in the Complaint to only mean JM Living Trust.

9. Deny.

10. Admit that under the terms of the Engagement Agreement, the Client agreed to pay the Firm a 33 1/3% contingency fee of any amounts recovered in Arizona litigation. Deny that the contingency fee was subject to payment of a $12,000 fee. Admit the $12,000 fee based on Firm hours was to be paid in $500 monthly instalments beginning in January 2015. Affirmatively assert that an initial payment of $1,500 was required under the terms of the Engagement Agreement prior to January 2015. Affirmatively assert that the Engagement Agreement provided that if the Firm's representation of the Client was terminated for any reason prior to the occurrence of the contingency, the fees payable under the Engagement Agreement were capped at $12,000. Deny the final sentence of ¶10 as the Engagement Agreement provides that the contingency fee earned was to be calculated by applying the percentage and then deducting amounts already paid toward the pre-contingency fee cap.

11. Admit, but clarify that summary judgment was against only one of the three defendants in the Arizona State Court litigation.

12. Admit, but clarify that only one of the three Arizona State Court defendants, the same defendant against which the summary judgment minute entry was entered, sought protection under Chapter 11.

13. Deny. The Arizona Bankruptcy settlement involved a global settlement of all claims in the Chapter 11 case (approximately $5 million in claims), not just the Client's claim. The settlement motion was filed by the Debtor-In-Possession. On February 16, 2016, the Arizona Bankruptcy Court approved the settlement subject to 30-days negative notice. During that 30-day period, one creditor objected, the objection was resolved, the settlement agreement amended and re-filed, the objection withdrawn, and then on March 20, 2015, without a hearing that day, the Arizona Bankruptcy Court entered an order approving the amended settlement pursuant to its prior 30-day negative notice order.

14. Admit.

**B.    The Shearer Bankruptcy Case**

15. Admit. Affirmatively assert, to clarify, that any "earnings" post-petition and any post-petition increase in value of the Firm's equity are excepted from the estate under the earnings exception contained in section 541(a)(6) of the Bankruptcy Code.

16. Deny.

17. Admit.

18. Admit.

**C.    Post-Petition Events**

19. Admit the Declaration of Melanie P. Goolsby ("Goolsby Declaration") setting for the facts and circumstances described in the Complaint related thereto is attached to the Complaint. To the extent facts contained in that Declaration are not pled within the text of the Complaint proper, Debtor objects to incorporation by reference of those facts, and if incorporated over Debtor's objection, the Debtor does not have sufficient information to admit or deny any unspecified, but incorporated, facts.

20. Deny.

21. Deny.

22. Admit that on August 28, 2016 counsel for the Trustee participated in a number of phone conferences with the Debtor. Deny the remainder of ¶22.

23. The Debtor does not have sufficient information to admit or deny the first sentence of ¶23. Admit the Debtor received an e-mail. Deny the Debtor was instructed to cease and desist in that e-mail. The Trustee's demand by e-mail was not of the Debtor, but rather was of Shawn Shearer "as President and Director of the PC" to cease and desist from all transfers and transactions on behalf of the Firm, and for the President and Director of the PC to prepare an account "for all transactions of the PC" from the Petition Date through August 29, 2016. [Goolsby Declaration Exhibit A] Deny the subpoena directed responsive production to be produced at the August 29, 2016 hearing. Deny the remainder of ¶23.

24. Admit that the sentence quoted in the first sentence of ¶24 was one of sentence within the seven paragraphs contained in the Debtor's Friday, August 26, 2016, 7:57 p.m. email

attached as Exhibit C to the Goolsby Declaration. Deny the subpoena was served. Admit the remainder of ¶24, noting that the final clause of the last sentence of ¶24, was one clause within seven paragraphs of the referenced email, and affirmatively assert that an additional e-mail by Debtor to Trustee was sent two days later on late the evening of August 28, 2016.

25. Deny the first clause of the first sentence of ¶25. Deny that the Debtor's August 28, 2016 e-mail specified "Firm" accounts. Admit the Debtor e-mailed Trustee and counsel just 52 hours later, on Sunday night August 28, 2016 at 11:47 p.m. Admit that the Debtor indicated in the email that he had complied with everything he could, and that he "would have in his possession" certain requested items at the hearing the following day. Affirmatively assert that those items were in his possession that day. Affirmatively assert that the Trustee and counsel for the Trustee never requested the documents from the Debtor. Affirmatively assert that the Trustee and counsel for the Trustee left the courtroom immediately upon the initial closing of the record of the August 29, 2016 hearing, the Court requested that the Debtor look for the Trustee and counsel, the Debtor exited the Courtroom to search for the Trustee and counsel, Trustee and counsel could not be found, and the Court then went on back on the record to inform the Debtor of the treatment of the Trustee's objection to exemption motion and advised the Debtor that the Court would be contacting the Trustee to convey the same information.

26. Admit the first sentence of ¶26. Deny the second sentence of ¶26. Admit the Debtor objected that it was unreasonable to produce bank statements "as of" August 29, 2016 since the banking day did not conclude until after the time of the hearing to begin. Deny that "electronic bank records" "as of" August 29, 2016 may be generated at any time via access to the online account. Deny the fourth sentence of ¶26. Deny the Debtor has an obligation under the subpoena.

27. Deny the first sentence of ¶27. Admit the second sentence of ¶27.

28. In the first sentence of ¶28, admit that the Debtor indicated on the record to continue to comply with the agreement as in place prior to the August 29th hearing, and otherwise deny the first sentence to the extent contradictory to this admission. Admit that the Debtor responded on the record, as quoted in ¶28, to the Court's question whether Debtor was "agreeable to the money being held, or are they going to need to file a temporary restraining order?" Affirmatively assert,

that despite Debtor's agreement reflected in ¶28 to avoid a TRO, the Trustee nevertheless sought a temporary restraining order in the Complaint, and a TRO hearing on that count of the complaint was held on September 19, 2016.

29. Admit.

30. Deny the first sentence of ¶30 as a mischaracterization of the Court's recommendation. Admit the Trustee contacted the Debtor after conclusion of the hearing. Deny that Trustee requested invoices and statements referenced on the record. Deny the Trustee requested a proposed operating budget for the Firm. Admit the remainder of the second sentence of ¶30. Admit the third sentence of ¶30 except deny the italic bold language of the third sentence of ¶30.

31. Admit. Affirmatively assert Debtor requested time availability of counsel for the Trustee and the Trustee for a meeting the week following the canceled meeting.

32. Admit. Affirmatively assert that the Debtor responded to the emails referenced in ¶32 asserting that the property and information requested was not property of the estate.

33. Admit that over the next two days, email correspondence between the Debtor and counsel for the Trustee continued to occur. Admit the Debtor asserted that the Debtor was not obligated to provide proof of funds in Firm accounts because the Firm accounts were not property of the estate and the motion to quash was pending. Deny Debtor refused to respond to counsel's request to set a meeting the following week after counsel returned from travelling to attend oral argument. Affirmatively assert that counsel for the Trustee did not contact Debtor from August 31, 2016 to September 14, 2016, with that September 14th contact being counsel providing Debtor a copy of the Complaint by email. Deny the remainder of ¶33 to the extent inconsistent with the above.

34. Deny.

35. Complaint ¶35 merely is a summary of the allegations in the prior paragraphs. The specific admissions and denials of the facts included in the ¶35 "recap" are included in the admissions and denials above. Deny ¶35 to the extent the recap differs from the alleged facts in ¶1 to ¶34 above purportedly being "recapped.".

## IV.    CAUSES OF ACTION

### Count One
### Declaratory Judgment (Debtor and Firm)

36. Debtor incorporates each of the foregoing admissions and denials as if fully set forth herein.

37. Deny.

38. Admit.

39. Admit the first sentence of ¶39. Deny the remainder of ¶39.

40. Deny the first clause of ¶40. Admit the second clause of ¶40.

41. Deny. Affirmatively assert that management and control of a corporation's assets are vested in the board of directors and officers of the corporation, not the shareholders.

42. Deny.

43. Deny.

44. Admit the first sentence of ¶44 as to the alleged controversy between Trustee and Debtor. Deny the first sentence of ¶44 as to the alleged controversy between the Trustee and Firm. Admit the second sentence of ¶44.

45. Admit the first sentence of ¶45. Deny the remainder of ¶45.

46. Deny.

### Count Two
### Turnover (Debtor & Firm)

47. Debtor incorporates each of the foregoing admissions and denials as if fully set forth herein.

48. Admit.

49. Deny.

50. Admit the Debtor disputes the estate's entitlement to the equity interest in the Firm. Deny the remainder of ¶50.

51. Deny.

52. Deny.

53. Deny.

## Count Three
## Temporary Restraining Order and Temporary Injunction (Debtor & Firm)

54. Debtor incorporates each of the foregoing admissions and denials as if fully set forth herein.

55. Deny.

56. Deny.

57. Deny.

58. Deny.

59. Deny.

60. Deny.

## V. PRAYER

Deny.

## VI. AFFIRMATIVE DEFENSES

Having answered the Complaint, the Debtor asserts the following enumerated Affirmative Defenses.

### First Affirmative Defense
### Rule 12(b)(6) – Failure to State a Claim – Firm Assets are Not Assets of the Estate

As the First Affirmative Defense the Debtor asserts Rule 12(b)(6) failure to state a claim upon which relief can be granted, as Plaintiff has not pled either a factual or legal basis for relief to justify a turnover of the Firm's assets to the Debtor's estate. The Plaintiff requests the Court to (i) declare that the Trustee may exercise control over the Firm and its assets; and (ii) that benefits to the estate generated by the Trustee's liquidation of the Firm (which assets of the Firm the Plaintiff pleads were all generated by the Firm after the Debtor's petition in ¶¶13, 14 of the Complaint) are not proceeds from Debtor's personal services after the commencement of the case.

Assets of the Firm are not property in the Debtor's estate under §541(a)(1). A professional corporation is a separate entity from the estate. *In re Sholdra*, 270 BR 64, 67 (Bankr. N.D. Tex. 2001). *Halverson v. Funaro (In re Funaro)*, 263 BR 892 (B.A.P. 8th Cir. 2001; *see also Parker v.*

*Saunders (In re Bakersfield Westar, Inc.)*, 226 BR 227, 234 (B.A.P. 9th Cir. 1998). Any profits from the Firm's operations are the property of the Firm, not the estate. The Firm may transfer its property, whether existing before or after the Debtor's petition, without restriction by the Trustee, and any such transfer does not constitute transfers of property of the estate. *Sholdra* 270 BR at 67.

*Solum Eng., Inc. v. Preis & Roy, PLC*, 2011 Tex.App. LEXIS 7798 (Tex.App.-Houston – 2011

> "Under Texas law, a corporation is an entity separate from its shareholders. While under certain extraordinary circumstances the corporate fiction may be disregarded, mere control and ownership of all the stock of a corporation is not a sufficient basis for ignoring the distinction between the shareholder and the corporate entity." *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997) (citations omitted). . . . Thus, even an individual's status as a sole shareholder does not extinguish the existence of a corporation as a distinct legal entity, separate and apart from its shareholder(s). *See id.* Just as a shareholder generally is not liable for a corporation's obligations under a contract, a shareholder cannot terminate a corporation's contractual obligations.

*Holland v. Alker*, 2006 Tex. App. LEXIS 3125, 2006 WL 1041785

> A professional corporation is a separate and distinct entity from an attorney who practices as a member of the corporation, even if he is the sole shareholder of the corporation.

This Court held in *Sholdra*, under facts identical to those of Debtor in this case, that the Professional Corporation's assets are not property of the estate under §541:

> A [professional association] is a separate entity from the estate. *Halverson v. Funaro (In re Funaro)*, 263 BR 892 (B.A.P. 8th Cir. 2001; *see also Parker v. Saunders (In re Bakersfield Westar, Inc.)*, 226 BR 227, 234 (B.A.P. 9th Cir. 1998). Any profits from a PA's operations were the property of the PA until it distributed them. Thus the payments by the PA [to the debtor] were not transfers of property of the estate . . .

The Plaintiff has failed to plead any grounds, factual or legal, for the assets of the Firm to be included in the assets of the estate in light of Texas law and this Court's ruling in *Sholdra*. The Plaintiff has failed to plead any grounds, factual or legal, justifying declarations that Firm assets

are property of the estate. The Plaintiff has failed to plead and grounds, factual or legal, for an order that the Firm turnover its assets to the estate. The Plaintiff has failed to state a claim upon which relief can be granted.

### Second Affirmative Defense
### Rule 12(b)(6) – Failure to State a Claim - Earnings Exception §541(a)(6)

As the Second Affirmative Defense, the Debtor asserts Rule 12(b)(6) failure to state a Claim upon which relief can be granted, as Plaintiff has not pled a basis for to justify including the proceeds, product, offspring, rents, or profits from property of the estate that are "earnings" from services performed by an individual debtor after commencement of the case under §541(a)(6). The Plaintiff has pled, and the Debtor has admitted, that the Debtor has been the only professional employed by the Firm, and that all of the events giving rise to the Net Fee, and the Trustee's asserted interest in the Firm's receivables, occurred post-petition. If the Firm's shares are held by the estate as of the Petition Date, any post-petition appreciation in the value of the shares of the Firm constitute "earnings" from services performed by an individual debtor post-petition, and are not included as proceeds, profits, etc. of the equity under the earnings exception of §541(a)(6). *In re Prince*, 85 F.3d 314, 322 (7th Cir. 1996) (Appreciation in the value of a professional corporation's stock as a result of the professional's individual services is not included in the estate under §541(a)(6)); *In re Christy*, 306 BR 611, 612 (Bankr. C.D. Ill. 2014) (citing and relying on this Court's decision in *In re Sholandra*); *In re FitzSimmons*, 725 F.2d 1208 (9th Cir. 1984) (solo practitioner operating as a sole proprietor employing other attorneys allowed to exempt earnings attributable to his individual work); *In re Molina Y Vedia*, 150 BR 393 (Bankr S.D. Tex. 1992). Similarly, any value realized from the estate's shareholder liquidation of the Firm's assets in excess of the liquidation value of the Firm on the Petition Date, calculated assuming no post-petition services by the Debtor, would constitute proceeds from property of the estate excluded from the estate under the earnings exception of §541(a)(6) earnings exception. All value in excess of the Petition Date liquidation represents "earnings" excluded from the profits and proceeds of property of the estate generated solely by Debtor's post-petition services. Even if the Firm's Petition Date liquidation value may be included in the

estate under §541, the estate is not entitled to that value because (i) the value of the Firm equity on the Petition Date represented Debtor's pre-petition current wages, and the proceeds thereof, exempt under Texas law, and (ii) if the estate had an equitable interest in the Firm's assets as alleged in the Complaint, the estate did not assume the Engagement Agreement (and could not assume the Engagement Agreement) under §365, and therefore is not entitled to the receivables and collections payable under the Engagement Agreement that was rejected.

The Plaintiff has failed to plead a claim, factual or legal, upon which the Court may grant the requested declarations and turnover orders, or any claim to the equity value represented by the Firm's stock either on the Petition Date or subsequent thereto.

### Third Affirmative Defense
### Rule 12(b)(6) – Failure to State a Claim
### Violation of the Thirteenth Amendment of the United States Constitution

As the Third Affirmative Defense, the Debtor asserts that the requested order confiscating the fruits of Debtor's post-petition labor violates the Thirteenth Amendment of the United States Constitution, and is a claim upon which relief cannot be granted. The Thirteenth Amendment provides that neither slavery nor involuntary servitude shall exist within the United States and that Congress has the power to enforce the Thirteenth Amendment by appropriate legislation. The Bankruptcy Court for the Southern District of Texas wrote in *In re Molina Y Vedia*, 150 BR 393, 398-399 (Bankr S.D. Tex. 1992):

> In determining what constitutes property of the estate, Section 541 applies to all chapters irrespective of whether an individual files a voluntary petition or is subject to an involuntary petition by his creditors. 11 U.S.C. §§ 103(a) and 303. Thus, Section 541 must be read to balance appropriate legislative concerns regarding what property interests are to be included as property of the estate in light of constitutional concerns, namely, the Thirteenth Amendment's prohibition against involuntary servitude. . . . Similarly, the earnings exception embodied in 11 U.S.C.§ 541(a)(6) expresses Congress' intent to avoid any potential conflict with the Thirteenth Amendment . . . [*In Toibb v. Radloff*, 115 L. Ed. 2d 145, 111 S.Ct. 2197 (1991) at 2202] Clearly, the Supreme Court recognized the implications of the Thirteenth Amendment, and Congress' attempt to avoid any potential conflict through its enactment of the earnings exception embodied in Section 541(a)(6).

A trustee's confiscation of the fruits of a Chapter 7 debtor's post-petition earnings (after the debtor has already transferred his non-exempt §541 assets to the trustee for liquidation), has the effect of transferring the debtor's earnings from providing post-petition services to the debtor's pre-petition creditors. The whole purpose of Chapter 7 is gutted. Such a result directly contradicts the "fresh start" policy and violates the 13th Amendment. This is unlike a situation where an individual debtor seeks relief under Chapters 11, 12 or 13. Applying an individual debtor's post-petition earnings in a Chapter 11, 12 or 13 is a voluntary act by the debtor in seeking relief under those Chapters, not involuntary servitude. Congress recognized this distinction in §§1115(a)(2), 1207(a)(2), and 1306(a)(2), which specify that an individual debtor's post-petition earnings are property of the estate in the reorganization Chapters despite the earnings exception in §541(a)(6). Chapter 7 does not have a similar provision in the Bankruptcy Code to include the earnings from an individual debtor's post-petition services in the property of the estate. Rather, in a Chapter 7, Congress exercising its authority under the 13th Amendment to enforce the prohibition on involuntary servitude, adopted the earnings exception in §541(a)(6). A Chapter 7 debtor is not required to commit the debtor's earnings from post-petition individual services to the trustee and estate for distribution to pre-petition creditors, after payment of trustee and counsel fees.

The requested declarations and orders to turn over the fruit of the Debtor's post-petition services to the estate violates the Thirteenth Amendment and ignores §541(a)(6) earnings exception, and as such, are not a claim upon which this Court may grant relief.

**Fourth Affirmative Defense**
**Rule 12(b)(6) – Failure to State a Claim**
**Estate May Not Hold Firm Equity and**
**Violation of the 14th Amendment of the United States Constitution**

As the Fourth Affirmative Defense, the Debtor asserts that a requested order permitting the Trustee to take possession and ownership of the Firm's equity do solely to the Trustee being a licensed Texas attorney violates the 14th Amendment. The estate has its own existence. The estate is an entity separate and apart from the trustee. The estate, not the trustee personally, owns the property of the estate. *In re T.P. Long Chemical, Inc.*, 45 BR 278, 283 (ND Ohio 1985). The

title to Debtor's shares of the Professional Corporation may not be transferred to the estate because the estate may not hold the shares under Texas law, and the estate may not practice law. Texas Business Organizations Code §§301.001(3), (5), (7), 301.004(2), 301.007(b), & 301.009. If the estate is permitted to piggy-back on the Trustee's law license, to continue to reap the benefits of post-petition legal practice by the Debtor, the Debtor would be treated differently that a doctor practicing solo through a professional corporation, as the Trustee could not hold those shares because he does not possess a license to practice medicine. The right to equal protection under the 14th Amendment to the United States Constitution mandates that the government provide uniform treatment of all similarly situated persons or groups within its jurisdiction. *Kentucky Finance Corp. v. Paramount Auto Exch. Corp.*, 262 US 544, 671 (1923) To the extent that persons who are similarly situated are being subject to disparate treatment, that discrimination must have a rational justification, where statutes involving economic matters are involved. *United States v. Kras*, 409 US 434, 446 (1973). There is no rational justification for debtors in Chapter 7 to be treated differently based solely on the varying personal characteristics of trustees assigned by legal process.

### Fifth Affirmative Defense
### Laches & Waiver; Section 704(a)(1)

As the Fifth Affirmative Defense, the Debtor asserts Laches and Waiver. The Plaintiff did not assert any claim to the profits generated by the Debtor's post-petition services until after the Net Fee was earned by the Firm from to Debtor's post-petition labor. The Trustee has a duty to expeditiously close the case under §704(a)(1). Had the Trustee asserted control of the Firm at the time of the initial §341 meeting, the Debtor could have terminated his employment with the Firm, signed an engagement agreement with the Arizona client to proceed as a solo practitioner, and the client would have terminated the Engagement Agreement between the Firm and the Arizona Client. If terminated, the Firm was not entitled to recover anything more than the $4,500 remaining to come due over the following nine plus months. The Trustee has taken no action as shareholder of the Firm, if the estate is a shareholder. No shareholders meetings have been held. No control over the Firm asserted. No authorization to operate Debtor's business

under §721 has been sought. The Trustee even still is equivocating in the Complaint over whether or not the estate owns the equity of the Professional Corporation. The Trustee's delay until after the Net Fee was earned and collected to assert control over the Firm's operation limited the Debtor's ability to terminate his employment with the Firm, and resulted in involuntary servitude by the Debtor for the Debtor's pre-petition creditors. The Debtor did not have a duty to remain employed by the Firm or to continue to generate revenue for the Firm, and the Debtor was not prohibited from leaving the Firm and taking the clients with him. See *Sholdra* at footnote 16. The Trustee did not take a position as to an asserted equitable interest in the Firm's assets and contracts until the Complaint, which was filed more than seven months after the Petition Date. The Trustee did not timely assume the Firm's contracts under §365 if the estate did have an equitable interest in the Engagement Agreement. Trustee's delay severely prejudiced the Debtor's post-petition employment and services decision making. The Trustee waived any equitable interest in the Firm's agreements by failing to assume such agreements within 60 days of the Petition Date.

**Sixth Affirmative Defense**
**Rule 12(b)(6) – Failure to State a Claim**
**Post-Petition Firm Earnings and Limitations on Recovery**

As a Sixth Affirmative Defense, the Debtor asserts that the estate, if it may recover anything at all from the value of the equity, liquidation of the Firm, or sale of the Firm's assets, may only retain that amount of value that does not exceed the liquidation value of the Firm at the commencement of Debtor's case. Even then, such liquidation value would be exempt pre-petition current wages, or excluded as proceeds of an unassumed contract.

The following legal theories all separately, and more powerfully jointly, support analyzing this case as if the Firm was terminated from its representation of all of its clients, including its Arizona clients, as of commencement of the Debtor's case, and to treat all post-petition revenue of the "Firm" as post-petition earnings from Debtor's services alone that are excluded from the estate:

(i)    The earnings exception of §541(a)(6) excludes from the estate "earnings" from post-petition personal services of Debtor, and the termination fee provisions of the

Engagement Agreement limited recoverable fees if the representation was terminated for any reason;

(ii) The prohibition on a professional corporation continuing its legal practice if owned by a non-lawyer under the Texas Business Organizations Code §§301.008, 301.009;

(iii) The prohibition on a non-lawyer serving as an officer or director of the Firm. Texas Business Organizations Code §301.007(b);

(iv) The requirement that a professional corporation only provide professional services through owners, officials, employees and agents that are authorized to practice law. Texas Business Organizations Code §301.006(b);

(v) Article XII of the Firm's Bylaws (a true and correct copy of which is attached hereto as *Exhibit A*) prohibiting ownership of the Firm's shares by a non-lawyer;

(vi) The prohibition on fee splitting under Rule 5.04(a) of the the Texas Disciplinary Rules of Professional Conduct ("A lawyer or law firm shall not share or promise to share legal fees with a non-lawyer");

(vii) The prohibition on the Debtor as a licensed attorney forming a partnership practicing law with a non-lawyer under Rule 5.04(b) of the Texas Disciplinary Rules of Professional Conduct ("A lawyer shall not form a partnership with a non-lawyer if any of the activities of the partnership consist of the practice of law.");

(viii) Even if the Engagement Agreement was an assumable executory contract between the Debtor and the Arizona clients (which it is not), the Trustee did not assume the Engagement Agreement timely under §365, and therefore, the Debtor performed legal services for the Arizona clients separately; and

(ix) The case law, applying a judicial, hypothetical, legal fiction of termination of a client representation in contingency fee cases as of the debtor's petition date, involving solo practitioners that had sought protection under the Bankruptcy Code. *In re Scotchel* 491 BR 739, 744 (Bankr. N.D.Va. 2013); *In re: Carlson*, 263 F.3d 748 (7th Cir. 2001); *In re Avery*, 947 F.2d at 774; *Tishgart v. Hoffman (In re Tishgart)*, No. 09-13400, 2012 Bankr. LEXIS 5311, 2012 WL 5489034, at *8 (B.A.P. 9th Cir. Nov. 13, 2012).

The Engagement Agreement [Trustee's Admitted Exhibit T-3] clearly provided that if the Firm's representation was terminated for any reason prior to the contingency, the Firm was only entitled to collect the remaining unpaid portion of the $12,000 capped fee, which at the time of commencement of Debtor's case, was $4,500 remaining payable to the Firm at $500 per month for nine months. Even then, the client would have had to consent to the assumption and they

did not. If the estate may hold the shares, and the Trustee can liquidate the Firm's assets, the Trustee is not permitted to retain for the estate any proceeds of liquidation in excess of the $4,500 fee that would have been due upon termination of the representation, as the occurrence of the contingency occurred after the hypothetical termination of the representation required for all the reasons cited above. Any amounts in excess of the termination fee value constitutes earnings arising out of the Debtor's post-petition services. "Earnings" as used in the earnings exception of §541(a)(6) includes earnings of any kind and nature, and is not limited solely to salary and wages. *In re Sholdra*, 270 BR at 69; *In re Evans*, 464 BR 429, 435 (Bankr. D. Co. 2011); *In re Prince*, 85 F.3d 314, 322 (7th Cir. 1996). Even then, that $4,500 receivable is not an asset of the estate because (i) it represents exempt current wages and the proceeds thereof under Texas law, and (ii) if the estate had an equitable interest in the Firm's assets, the estate did not assume the Engagement Agreement (and could not assume the Engagement Agreement) under §365, and therefore is not entitled to the receivable.

**Seventh Affirmative Defense**
**Rule 12(b)(6) – Failure to State a Claim**
**Engagement Agreement is Non-Assumable Contract Under §365**

As a Seventh Affirmative Defense, the Debtor asserts that, if the Plaintiff is correct that the estate has an equitable interest in the assets of the Professional Corporation, the estate nevertheless does not have interest in the Engagement Agreement, nor the proceeds and profits from the Engagement Agreement, because the Engagement Agreement was an executory contract, the Engagement Agreement was not assumed by the Trustee, and the Engagement Agreement is not assumable as it is a personal services contract which the client may terminate at any time and may decline representation by the Trustee. 11 U.S.C. §365(a) & (c); *In re Tonry*, 724 F.2d 467 (5th Cir. 1984). The proceeds received by the Firm pursuant to the Engagement Agreement were proceeds of a non-assumable executory contract, the contract was not assumed, and the estate is not entitled to any portion of the fees paid pursuant to that Engagement Agreement (including no right of the estate to receive the hourly fees due under that agreement for the Firm's services prior to the Debtor's Petition Date).

### Eighth Affirmative Defense
### §554 Abandonment

As the Eighth Affirmative Defense, to the extent the estate obtained ownership of all the Debtor's equity interest in the Professional Corporation, the equity is burdensome or of inconsequential value to the estate and the Trustee should be ordered to abandon the equity and for the shares to be vested in the Debtor pursuant to §554(b). Section 554(b) of the Bankruptcy Code provides:

> On the request of a party in interest, and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

The standards for abandonment were outlined in *In re K.C. Machine Tool Co.*, 816 F.2d 238, 245-6 (6th Cir. 1987)

> The trustee's purpose is to liquidate the estate for the benefit of unsecured creditors. The trustee need not take property burdensome to the estate because the unsecured creditors would not benefit thereby. *See In re Eli Witt Co.*, 39 Bankr. 984 (Bankr. M.D. Fla. 1984); *In re Peninsula Roofing & Sheet Metal, Inc.*, 9 Bankr. 257 (Bankr. W.D. Mich. 1981). . . . <u>In enacting §554, Congress was aware of the claim that formerly some trustees took burdensome or valueless property into the estate and sold it in order to increase their commissions. Some of the early cases condemned this particular practice in no uncertain terms, and decried the practice of selling burdensome or valueless property simply to obtain a fund for their own administrative expenses.</u> *See, e.g., Standard Brass Corp. v. Farmers National Bank*, 388 F.2d 86 (7th Cir. 1967); *Miller v. Klein (In re Miller)*, 95 F.2d 441 (7th Cir. 1967); *Seaboard National Bank v. Rogers Milk Products Co.*, 21 F.2d 414 (2d Cir. 1927). <u>Congress then gave the courts the power to order the trustee to abandon property at the request of a party in interest if the property was burdensome or valueless and of no benefit to the estate.</u> 11 U.S.C. §554(b) (1986 Supp.).

The value of the Professional Corporation's equity to the estate is nominal at best, and the estate is incurring significant administrative expenses. The estate's administrative costs have already consumed any recoverable amount. The estate holding the equity of a law firm is burdensome, especially when the Trustee is a licensed lawyer, and is of inconsequential value to the estate, justifies an order compelling the Trustee to abandon the equity under §554(b).

WHEREFORE, having fully defended, Debtor requests that Plaintiff's Complaint be dismissed, that Plaintiff take nothing thereby, the Court declare that the property of the Firm is not property of the estate, for the Court to declare that the estate may not hold and liquidate the shares of the Firm, for the Court to declare that the equity of the Firm is of inconsequential value to the estate or, in the alternative, declare that only the liquidation value of the Firm on the date of Debtor commencing his bankruptcy case may be retained by the estate, for the Court to deny Plaintiff's turnover requests, and for the Court to grant such other relief as the Court may deem just in the premises.

RESPECTFULLY SUBMITTED THIS 4th day of October, 2016.

Shawn Shearer, Shearer
3001 Sale Street #321
Dallas, TX 75219
Debtor

## CERTIFICATE OF SERVICE

   I hereby certify that, on October 4, 2016, a true and correct copy of the foregoing pleading was served via first class mail upon the party listed below and by ECF email upon parties accepting such service.

Melanie Goolsby
Pronskee Goolsby & Kathman, P.C.
901 Main Street, Suite 610
Dallas, TX 75202
Counsel for Trustee

Shawn Shearer

**BY-LAWS**

**OF**

**THE SHEARER LAW GROUP, P.C.**

## ARTICLE I. NAME AND LOCATION

Section 1.     The name of the corporation shall be The Shearer Law Group, P.c.

Section 2.     The principal office of the corporation in the State of Texas shall be 3436 Milton Avenue, Dallas, Texas, and its initial registered office in the State of Texas shall be 3436 Milton Avenue, Dallas, Texas. The corporation may have such other offices, either within or without, the State of Texas as the Board of Directors may designate or as the business of the corporation may require from time to time.

## ARTICLE II. SHAREHOLDERS

Section 1.     <u>Annual Meeting</u>. The annual meeting of shareholders shall be held on August 1 in each year, beginning with the year 2013 at the time designated by the Board of Directors, for purposes of electing Directors and for the transaction of such other business as may come bfore the meeting. If the day fixed for the annual meeting shall be a legal holiday in the State of Texas, such meeting shall e held on the next succeeding business day. If the election of Directors shall not be held on the day designated herein for any annual meeting of shareholders, or ay any adjournment thereof, the Board of Directors shall cause the election to be held at a special meeting of the shareholders as soon thereafter as convenient.

Section 2.     <u>Special Meeting</u>. Special meetings of the shareholders, for any purpose or purposes, unless otherwised prescribed by statute, may be called by resolution òf the Board of Directors or by the President at the request of holders of not less than a majority of all the outstanding shares of the corporation entitled to vote on any issue proposed to be considered at the meeting, provided said shareholders sign, date and deliver to the corporate secretary one or more written demands for the meeting describing the purpose or purposes for which it is to be held. Only business within the purpose or purposes described in the meeting notice required by Article II, Section 5 of these By-Laws may be conducted at a special shareholder meeting. In addition, such meeting may be held at any time without call or notice upon unanimous consent of the shareholders.

Section 3.     <u>Place of Meeting</u>. The Board of Directors may designate any place, either within or without the State of Texas unless otherwise prescribed by statute, as the place of meeting for any annual meeting or for any special meeting of shareholders. A waiver of notice signed by all shareholders entitled to vote at a meeting may designate any place, either within or without the State of Texas unless otherwise prescribed by statute, as the place for the holding of such meeting. If no designation is made, or if a special meeting be otherwise called, the place of the meeting shall be the principal office of the corporation in the State of Texas.

1



Section 4.    Notice of Meeting.  Written or printed notice stating the place, day and hour of the meeting shall be delivered not less than ten (10) nor more than sixty (60) days before the date of the meeting, either personally or by mail, by or at the direction of the President, Secretary, or the officer or persons calling the meeting, to each shareholder of record entitled to vote at such meeting.  If mailed, such notice shall be deemed delivered when deposited in the United States mail, addressed to the shareholder at the address as it appears on the stock transfer books of the corporation, with postage thereon prepaid.  Notice of a special meeting shall include a description of the purpose or purposes for which the meeting is called.

Section 5.    Closing of Transfer Books or Fixing Record Date.  For the purpose of determining shareholders entitled to notice of or to vote at any meeting of shareholders of any adjournment thereof, or shareholders entitled to receive payment of ay dividend, or in order to make a determination of shareholders for any other proper purpose, the Board of Directors of the corporation may provide that the stock transfer books shall be closed for a stated period but not to exceed, in any case, seventy (70) days.  If the stock transfer books shall be closed for the purpose of determining shareholders entitled to notice of or to vote at a meeting of shareholders, such books shall be closed for at least ten (10) days immediately preceding such meeting.  In lieu of closing the stock transfer books, the Board of Directors may fix in advance a date as the record date for any determination of shareholders, such date in any case shall not be more than seventy (70) days, and in case of a meeting of shareholders, not less than ten (10) days prior to the date on which the particular action, requiring such determination of shareholders, is to be taken.  If the stock transfer books are not closed and no record date is fixed for the determination of shareholders, or shareholders entitled to notice of or to vote at a meeting of shareholders, or shareholders entitled to receive a dividend, the date on which the notice of the meeting is mailed or the date on which resolution of the Board of Directors declaring such dividend is adopted, as te case may be, shall be the record date for the determination of shareholders.  When a determination of shareholders has been made as provided in this section, such determination shall apply to any adjournment thereof.

Section 6.    Shareholder's List.  After fixing a record date, the officer or agent having charge of the share ledger of the corporation shall prepare an alphabetical list of all persons entitled to notice and to represent share at such meeting, or any adjournment thereof, and said list shall be arranged by voting group and shall show the address of and the number of shares held by each shareholder or representative.  The shareholders' list shall be available for inspection and copying during usual business hours by any shareholder beginning two (2) business days after notice of the meeting is given for which the list was prepared and continuing through the meeting, at the corporation's principal office or at a place identified in the meeting notice.  Such list shall be available during the meeting or any adjournment thereof.  The original stock transfer book shall be *prima facia* evidence as to who are the shareholders entitled to examine such list or transfer book or to vote at any meeting of the shareholders.

Section 7.    Quorum.  A majority of the outstanding shares of the corporation entitled to vote, represented in person or by proxy, shall constitute a quorum at a meeting of shareholders.  If less than a majority of the shares are represented at a meeting, a majority of the shares so represented may adjourn the meeting from time to time without further notice.  At such adjourned meeting in which a quorum shall be present or represented, any business may be transacted which

2

might have been transacted at the meeting as originally notified. The shareholders present at a duly organized meeting may continue to transact business until adjournment, notwithstanding the withdrawal of enough shareholders to leave less than a quorum.

Section 8.    Proxies. At all meetings of shareholders, a shareholder may vote by proxy executed in writing by the shareholder or by the shareholder's duly authorized attorney-in-fact. Such proxy shall be filed with the Secretary of the corporation before or at the time of the meeting. A proxy may only be given to another shareholder of the corporation.

Section 9.    Voting of Shares. Subject to the provisions of Section 12 of this Article II, each outstanding share entitled to vote shall be entitled to one vote upon each matter submitted to a vote at a meeting of shareholders. The affirmative vote of a majority of the outstanding shares represented at a shareholders' meeting at which a quorum is present shall be the act of the shareholders of the corporation.

Section 10.    Voting of Shares by Certain Holders. No shares may be voted except by shareholders who are licensed to practice law in the State of Texas. A shareholder whose shares are pledged shall be entitled to vote such shares until the shares have been transferred into the name of the pledgee, and thereafter the pledgee shall be entitled to vote the shares so transferred if otherwise permitted hereunder. Shares of its own stock belonging to the corporation or held by it in a fiduciary capacity shall not be voted, directly or indirectly, at any meeting, and shall not be counted in determining the total number of outstanding shares at any given time.

Section 11.    Informal Action by Shareholders. Unless otherwise provided by law, any action required to be take at a meeting of the shareholders, or any other action which may be taken at a meeting of the shareholders, may be taken without a meeting if a consent in writing, setting for the action so taken, shall be signed by all of the shareholders entitled to vote with respect to the subject matter thereof.

Section 12.    Cumulative Voting. Unless otherwise provided by law, at each election for Directors every shareholder entitled to vote, in person or by proxy, shall have the right to vote at such election the number of shares owned by such shareholder for as many persons as there are Directors to be elected and for whose election such shareholder has a right to vote, or to cumulate his votes by giving one candidate as many votes as the number of such Directors multiplied by the number of such shareholder's shares shall equal, or by distributing such votes on the same principle among any number of candidates.

## ARTICLE III.  BOARD OF DIRECTORS

Section 1.    General Powers. The business and affairs of the corporation shall be managed by its Board of Directors except as otherwise provided herein.

Section 2.    Number, Tenure and Qualifications. The number of Directors of the corporation shall e one (1). Each Director shall hold office until the next annual meeting of shareholders and until his successor shall have been elected and qualified. Directors may be re-elected. Every Director shall e licensed to practice law in the State of Texas.

3

Section 3. <u>Regular Meetings</u>. A regular meeting of the Board of Directors shall be held without other notice than this By-Law immediately after and at the same place as the annual meeting of shareholders. The Board of Directors may also provide by resolution, the time and place for the holding of additional regular meetings without other notice than such resolution.

Section 4. <u>Special Meetings</u>. Special meetings of the Board of Directors may be called by or at the request of the President or any Director. The person or persons authorized to call special meetings of the Board of Directors may fix the place for holding any special meeting of the Board of Directors called by them.

Section 5. <u>Notice</u>. Notice of a special meeting shall be given at least five (5) days prior thereto by notice personally given or mailed to each Director at his business address or by e-mail to the Director's designated e-mail address. If mailed, such notice shall be deemed to be delivered when deposited in the United States mail so addressed with postage thereon pre-paid. If notice is given by e-mail, such notice shall be deemed delivered upon confirmation of receipt either electronically or verbally. Any Director may waive notice of any meeting. The attendance of a Director at a meeting shall constitute waiver of notice of such meeting, except where a Director attends a meeting for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened, and does not thereafter vote for or assent to action taken at the meeting.

Section 6. <u>Quorum</u>. A majority of the number of Directors fixed by Section 2 of this Article II shall constitute a quorum for the transaction of business at any meeting of the Board of Directors, but if less than a majority is present at any meeting, a majority of the Directors present may adjourn the meeting from time to time without further notice.

Section 7. <u>Manner of Acting</u>. The act of a majority of the Directors present at a meeting at which a quorum is present shall be the act of the Board of Directors.

Section 8. <u>Compensation</u>. By resolution of the Board of Directors, the Directors may be paid their expenses, if any, of attendance at each meeting of the Board of Directors and may be paid a fixed sum for attendance at each meeting fo the Board of Directors or a stated salary as a Director. No such payment shall preclude any Director from serving the corporation in any other capacity and receiving compensation therefor.

Section 9. <u>Presumption of Assent</u>. A Director of the corporation who is present at a meeting of the Board of Directors at which action on any corporate matter is taken shall be presumed to have assented to the action taken unless such dissent shall be entered in the minutes of the meeting or unless such Director shall file a written dissent to such action with the person acting as Secretary of the meeting before the adjournment thereof or shall forward such dissent by registered mal to the Secretary of the corporation immediately following adjournment of the meeting. Such right to dissent shall not apply to any Director who voted in favor of such action.

Section 10. <u>Informal Action by Board of Directors</u>. Unless otherwise provided by law, any action required to be takne at a meeting of the Directors, or any other action which may be

4

taken at a meeting of the Directors, may be taken without a meeting if a consent in writing, setting for the action so taken, shall be signed by each Director, and included in the minutes or filed with the corporate records reflecting the action taken.

## ARTICLE IV. OFFICERS

Section 1.    Number. The Officers of the corporation shall be a President, none, one or more Vice-Presidents and a Secretary-Treasurer, each of whom shall be elected by the Board of Directors. Such officers and assistant officers as may be deemed necessary bay be elected or appointed by the Board of Directors. Each officer of the corporation shall be licensed to practice law in the State of Texas.

Section 2.    Election and Term of Office. The officers of the corporation to be elected by the Board of Directors shall be elected annually by the Board of Directors at the first meeting of the Board of Directors held after each annual meeting of the shareholders. Of the election of officers shall not be held at such meeting, such election shall be held at as soon thereafter as convenient.

Section 3.    Removal. Any officer or agent elected or appointed by the Board fo Directors may be removed by the Board of Directors whenever in its judgment the best interest of the corporation would be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the person so removed.

Section 4.    Vacancies. A vacancy in any office because of death, resignation, removal, disqualification or otherwise, may be filled by the Board of Directors for the unexpired portion of the term.

Section 5.    President. The President shall e the principal executive officer of the corporation and, subject to the control of the Board of Directors, shall in general supervise and control all of the business and affairs of the corporation. The President, when present, shall preside at all meetings of the shareholders and of the Board of Directors. The President may sign certificates for shares of the corporation, any deeds, mortgages, bonds, contracts or other instruments which the Board of Directors has authorized to be executed except in cases where the signing and execution thereof shal be expressly delegated by the Board of Directors, or by these By-Laws, to some other officer or agent of the corporation, or shall be required by law to be otherwise siged or executed; and in general shall perform all duties incident to the office of President and such other duties as may be prescribed by the Board of Directors from time to time.

Section 6.    Vice-President. The board of Directors may determine when there is a need for a Vice-President or Vice-Presidents. In the absence of the President or in the event of the President's death, unavailability of or refusal to act, a Vice-President shall perform the duties of the President, and when so acting, shall have all of the powers of and be subject to all of the restrictions upont he President. A Vice-President shall perform such other duties as from time to time may be assigned by the President or the Board of Directors.

5

Section 7.    Secretary-Treasurer. The Secretary-Treasurer shall: (a) keep the minutes of the shareholders and Board of Directors meetings in one or more books provided for that purposes; (b) be custodian of the corporate records and of the seal of the corporation and see that the seal of the corporation is affixed to all documents for which such seal may be required; (c) see that all notices are duly given in accordance with the provisions of these By-Laws or as required by law; (d) keep a register of the post office address of each shareholder which shall be furnished to the Secretary by such shareholder; (e) have general charge of the stock transfer books of the corporation; (f) have charge and custody of and be responsible for all funds and securities of the corporation, receive and give receipts for monies due and payable to the corporation from any source whatsoever, and deposit all such monies in the name of the corporation in such banks, trust companies or other depositories as shall be selected in accordance with Article V of these By-Laws; and (g) in general perform all of the duties incident to the Office of Secretary-Treasurer and such other duties as from time to time may be assigned by the President or by the Board of Directors. If required by the Board of Directors, the Secretary-Treasurer shall give a bond for the faithful discharge of duties in such sum and with such surety or sureties as the Board of Directors may determine.

Section 8.    Salaries. The salaries, compensation and other benefits, if ay, of the officers shall be fixed from time to time by the Board of Directors, and no officer shall be prevented from receiving such salary by reason of the fact that such officer is also a Director f the corporation.

## ARTICLE V. CONTRACTS, LOANS, CHECKS AND DEPOSITS

Section 1.    Contracts. The Board of Directors may authorize any officer or officer, agent or agents, to enter into any contract or execute and deliver any instrument in the name of and on behalf of the corporation, and such authority may be general or confined to specific instances.

Section 2.    Loans. No loans shall e contracted on behalf of the corporation and no evidence of indebtedness shall be issued in its name unless authorized by a resolution of the Board of Directors. Such authority may be general or confined to specific instances.

Section 3.    Checks, Drafts, etc. All checks, drafts, or other oders for the payment of money, notes or other evidences of indebtedness issued in the name of the corporation shall be signed by such officer or officers, agent or agents of the corporation and in such manner as from time to time be determined by resolution of the Board of Directors.

Section 4.    Deposits. All funds of the corporation not otherwise employed shall be deposited from time to time to the credit of the corporation in such bank, trust companies or other depositories as the Board of Directors may select.

## ARTICLE VI. CERTIFICATES FOR SHARES AND THEIR TRANSFER.

Section 1.    Certificates. Certificates representing shares of the corporation shall be in such form as shall be determined by the Board of Directors. Such certificates shall be signed by the President and by the Secretary or by such other officers authorized by law and by the Board of Directors to do so. All certificates for shares shall be consecutively numbered or otherwise

identified. The name and address of the person to whom the shares represented thereby are issued, with the number of shares and date of issuance, shall be entered on the stock transfer books of the corporation. All certificates surrendered to the corporation for transfer shall be canceled and no new certificate shall be issued until the former certificate for a like number of shares shall have been surrendered and canceled, except in the case of a lost, destroyed or mutilated certificate, a new one may be issued therefor upon such terms and indemnity to the corporation as the Board of Directors may prescribe.

Section 2.    Transfer of Shares. Transfer of shares of the corporation shall be made only on the stock transfer books of the corporation by the holder of record thereof or by such holder's legal representative, who shall furnish proper evidence of authority to transfer, or by the holder's attorney thereunto authorized by power of attorney duly executed and filed with the Secretary of the corporation, and on surrender for cancellation of the certificate of such shares, and also, any transfer is subject to the limitations set forth in the Certificate of Formation, reference to which is hereby made. The person in whose name shares stand on the books of the corporation shall be deemed by the corporation to be the owner thereof for all purposes.

## ARTICLE VII. FISCAL YEAR

The fiscal year of the corporation shall begin on the 1st day of January and end on the 31st day of December each year.

## ARTICLE VIII. DIVIDENDS

The Board of Directors may from time to time declare, and the corporation may pay dividends on its outstanding shares in the manner and upon the terms and conditions provided by law and its Certificate of Formation.

## ARTICLE IX. SEAL

The Board of Directors shall provide a corporate seal which shall be in circular form and shall have inscribed thereon the name of the corporation and the state of incorporation and the words "Corporate Seal."

## ARTICLE X. WAIVER OF NOTICE

Unless otherwise provided by law, whenever any notice is required to be given to any shareholder or Director of the corporation under any provision of these By-Laws or under any provision of the Certificate of Formation, a waiver thereof in writing, signed by the person or persons entitled to such notice, whether before or after the time stated therein, shall be the equivalent of giving notice.

## ARTICLE XI. AMENDMENTS

These By-Laws may be altered, amended r repealed and new By-Laws may be adopted by a majority vote of the Board of Directors at any annual meeting of the Board of Directors or at any

special meeting of the Board of Directors when the proposed amendment has been set out in the notice of such meeting. These By-Laws also may be altered, amended or repealed by a majority vote of the shareholders notwithstanding that these By-Laws may also be amended or repealed by the Board of Directors.

## ARTICLE XII.  ADDITIONAL PROVISIONS

In the event any shareholder becomes disqualified to engage in the practice of law in the State of Texas, that shareholder shall immediately sever all ties with and employment by the corporation  The shares of said shareholder shall be offered, first, to the remaining shareholders for purchase at fair market value, and second, to the corporation at said price.

In the event of the death of a shareholder, the shares of said shareholder shall be immediately purchased by, first, the remaining shareholders at fair market value, and, second, by the corporation at said price.

The corporation shall at all times be subject to and in compliance with all applicable state and federal statutes, as well as all the rules and regulations of the State Bar of Texas and the Texas Supreme Court.

---

I hereby certify that these By-Laws were duly adopted by action of the Board of Directors of The Shearer Law Group, P.C. on August 1, 2013.

Shawn Shearer
Secretary

8